PANAMA R. CO. v. CURRAN et al.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1919.)

No. 3237.

1. EXCEPTIONS, BILL OF ⊚⟲36(1)—TIME FOR PRESENTING—STATUTE—CANAL ZONE.
The provision of Panama Canal Act Aug. 24, 1912, that the appellate jurisdiction of the Circuit Court of Appeals on appeals from the District Court of the Canal Zone may be exercised in the same manner, as nearly as practicable, as in reviewing judgments of the District Courts of the United States, shows that the earlier provision of the same section, that existing laws of the Canal Zone should be applicable to practice in new courts, was not intended to make applicable to appeals to the Circuit Court of Appeals Code Civ. Proc. Canal Zone, § 136, requiring bills of exception for review by the Supreme Court of the Canal Zone to be presented to trial court within 10 days.

2. APPEAL AND ERROR ⊚⟲709—COSTS ⊚⟲108—SECURITY—DISCRETION OF COURT —RECORD—EVIDENCE.
The executive order of August 14, 1914, relating to the Canal Zone, that plaintiff in any suit may be required to give security for costs, does not require such security whenever moved for by defendant, but confers on the court discretion to exercise the power, and his denial of a motion to compel a resident plaintiff to give security will not be reversed, where the record does not contain the evidence on the hearing of the motion.

3. APPEAL AND ERROR ⊚⟲684(2)—DISCRETION OF TRIAL COURT—MOTION FOR CONTINUANCE.
The overruling of a motion for a second continuance will not be reversed, where the evidence, if any, adduced on the hearing, is not in the record, so that there is no showing that the ruling was improper.

4. RAILROADS ⊚⟲5½. New. vol. 6A Key-No. Series—LIABILITY FOR TORTS— GOVERNMENT AS STOCKHOLDER.
Since Act June 25, 1910, Act Aug. 24, 1912, § 6 (Comp. St. § 10042), and other statutes and regulations and rulings, indicate an intention to preserve the corporate existence of the Panama Railroad Company, though the government owns all its stock, that corporation may be sued by a private individual for injuries caused by the negligence of its employés.

5. CORPORATIONS ⊚⟲491—LIABILITY FOR TORTS—ULTRA VIRES ACT.
A corporation cannot escape liability for negligent conduct of a business in which it engages, by showing that it was not authorized to carry on that business.

---

⊚⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. RAILROADS ⊜281(1)—INJURIES TO THIRD PERSON—NEGLIGENCE OF EM-
PLOYÉS.

Evidence that employés of the Panama Railroad Company oiled the
floor of a commissary operated by it, so as to make it dangerously slip-
pery, as a result of which a customer was injured, establishes negli-
gence for which the corporation was liable, under the law of the Canal
Zone.

In Error to the District Court of the Canal Zone; Wm. H. Jackson,
Judge.

Action by Mrs. T. T. Curran and husband against the Panama Rail-
road Company. Judgment for plaintiffs, and defendant brings error.
Affirmed.

Frank Feuille, of Ancon, C. Z., and Walter F. Van Dame, of Bal-
boa Heights, C. Z., for plaintiff in error

Stevens Ganson and Theodore C. Hinckley, both of Panama, R. P.,
for defendants in error.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This is a writ of error sued out by the
Panama Railroad Company (which will be referred to as the defend-
ant) to obtain a review of a judgment rendered against it in favor of
Mrs. T. T. Curran and her husband, T. T. Curran (who will be re-
ferred to as the plaintiffs).

[1] The judgment was rendered on the 28th day of November,
1917. By an order entered on the same day the court allowed 20 days
for a bill of exceptions. A bill of exceptions was presented and al-
lowed within that time. It was not presented within 10 days after
November 28, 1917. The defendants in error move that the bill of ex-
ceptions be stricken, on the ground that it was not presented to the
judge within 10 days after the court was informed that a bill of excep-
tions was desired and a memorandum to that effect was entered, as re-
quired by section 136 of the Code of Civil Procedure of the Canal
Zone with reference to bills of exceptions for the review of final judg-
ments by the Supreme Court of the Canal Zone. The claim that the
statute just referred to is applicable is based upon the provision of sec-
tion 9 of the Panama Canal Act of August 24, 1912 (37 Stat. 565, c.
390 [Comp. St. § 10045]), that "all existing laws in the Canal Zone
governing practice and procedure in existing courts shall be applica-
ble and adapted to the practice in the new courts." The same section
of the statute which contains the just-quoted provision contains also
the provision which confers on this court appellate jurisdiction to re-
view final judgments of the District Court of the Canal Zone in the
classes of cases stated. A part of the latter provision is that such ap-
pellate jurisdiction "may be exercised by said Circuit Court of Appeals
in the same manner, under the same regulations, and by the same
procedure as nearly as practicable as is done in reviewing the final
judgments and decrees of the District Courts of the United States."
The last-quoted provision makes it quite plain that the first-quoted one
does not include the manner of bringing cases from the District Court

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
256 F.—49

of the Canal Zone to this court. The explicit statement that the appellate. jurisdiction conferred may be exercised "in the same manner, under the same regulations, and by the same procedure as nearly as practicable as is done in reviewing the final judgments and decrees of the district courts of the United States," shows that existing laws of the Canal Zone were not intended to be made applicable to anything done after judgment looking to a review by this court. Hudson v. Parker, 156 U. S. 277, 15 Sup. Ct. 450, 39 L. Ed. 424; Detroit United Railway v. Nichols, 165 Fed. 289, 91 C. C. A. 257. The bill of exceptions is not subject to be stricken on the ground stated in the motion made to that end.

[2] The court overruled a motion of the defendants that the plaintiffs be required to deposit security for the costs of the suit. The motion was based upon the following provision of an executive order of the President issued on August 14, 1914:

"Section 1. The plaintiff in any civil suit, or special proceedings, may be ruled to give security for the costs upon motion of the defendant, or of any officer of the court interested in the costs accruing in such suit; and if such rule be entered against the plaintiff, and he fail to comply therewith, within the time prescribed by the court or · judge thereof, the suit shall be dismissed."

The terms of the quoted order are such as to indicate that it was not intended .to require that an order be made that the plaintiff give security for the costs whenever moved for by a defendant, and that an exercise of the power conferred was left to the discretion of the court. The complaint in the cause described the plaintiffs as residents of the Canal Zone. The record does not disclose what, if any, evidence was adduced on the hearing of the motion in question. There was evidence in the trial to the effect that the plaintiffs were residents of the Canal Zone. The quoted order is not to be given the effect of putting it in the power of a defendant to make a resident plaintiff's right to prosecute a suit dependent upon his giving security for the costs. It is not made to appear that there was any abuse .of discretion in the disposition made of the motion.

[3] In reference to the complaint as to the action of the court in overruling a motion of the defendant for a second continuance of the cause no more need be said than that it is not made to appear by the record that that ruling was an improper one. It is not disclosed what, if any, evidence was adduced on the hearing of that motion.

[4] The action was for the recovery of damages claimed to have resulted from injuries sustained by Mrs. Curran in consequence of her slipping and falling on the floor of the defendant's commissary or store in the village of Pedro Miguel, Canal Zone, while she was there for the purpose of making purchases. The alleged injuries were attributed to the negligence of the defendant in permitting the floor to be in a dangerously slippery condition. The right of the plaintiffs to maintain the action was brought into question on the ground that the store or commissary at which the injuries complained of occurred was not being operated by the defendant under its charter and by-laws, but, at the time of the injuries alleged and for some years prior thereto, was operated by the defendant as an agency of the government of the

United States in the construction and operation of the Panama Canal. On the cross-examination of R. K. Morris, a witness for the defendant, he stated:

"The commissaries are merely general stores for the benefit of the employés of the Panama Railroad and the Panama Canal. All of the employés have the privilege of going there for the purpose of buying. The goods at the Pedro Miguel commissary are all bought by the Panama Railroad. The commissaries are owned by the Panama Railroad Company, and the proceeds of the sale of these goods go to the railroad, and the railroad uses that money in paying the employés and in buying other goods. All of the employés of the Pedro Miguel commissary are paid by the Panama Railroad, including the employés who oil the floors. The Pedro Miguel has been in operation since 1912 in its present site. We had a commissary there since 1905."

The defendant is a New York corporation. All its capital stock is owned by the United States. Thirteen of the shares stand in the names of the directors of the company. Each of the directors for the time being gives to the Secretary of War an irrevocable power of attorney to transfer the stock standing in his name at any time. This enables that official, when the holder of a share ceases to be a director, to transfer it to the succeeding director. In the manner indicated the government absolutely controls the operations of the company. An intention to preserve the existence of the defendant as a private corporation has been clearly manifested in acts of Congress, some only of which need be mentioned. Act June 25, 1910, c. 384, making appropriation for sundry civil expenses of the government for the fiscal year ending June 30, 1911 (36 Stat. 771), contains an item of $2,000,000 "for the payment of the cost of relocating the Panama Railroad, including salaries, wages, material, and supplies, and all other expenses incident thereto." That act contained the following provision:

"The foregoing appropriations shall be available to reimburse the Panama Railroad Company for marine losses, and for losses due to destruction of or damage to its plant, equipment, or commissary supplies by fire: Provided, that the Panama Railroad Company shall carry no insurance against loss from causes covered by this appropriation: Provided, further, that hereafter payment by the Panama Railroad Company to the United States, in accordance with the treaty with Panama, of the annual subsidy of two hundred and fifty thousand dollars, as provided by the concession granted by the United States of Columbia, shall not be required."

Section 6 of the Panama Canal Act of August 24, 1912 (37 Stat. 560 [Comp. St. § 10042]), contains the following:

"The President is also authorized to establish, maintain, and operate, through the Panama Railroad Company or otherwise, dry docks, repair shops, yards, docks, wharves, warehouses, storehouses, and other necessary facilities and appurtenances for the purpose of providing coal and other materials, labor, repairs, and supplies for vessels of the Government of the United States and, incidentally, for supplying such at reasonable prices to passing vessels, in accordance with appropriations hereby authorized to be made from time to time by Congress as a part of the maintenance and operation of the said canal. Moneys received from the conduct of said business may be expended and reinvested for such purposes without being covered into the Treasury of the United States; and such moneys are hereby appropriated for such purposes, but all deposits of such funds shall be subject to the provisions of existing law relating to the deposit of other public funds of the United States, and any net profits accruing from such business shall

annually be covered into the treasury of the United States. Monthly reports of such receipts and expenditures shall be made to. the President by the persons in charge,.and annual reports shall be made to the Congress."

Departmental regulations and rulings indicate that it has been recognized that a purpose of preserving the corporate existence and organization was to make inapplicable to Panama Railroad receipts provisions requiring payment into the treasury of receipts by governmental agents. Whatever the purpose was, such legislation as that which has been mentioned shows that the lawmakers intended the relation between the government and the defendant to be that of a stockholder to the corporation which issued the stock, and not that of principal and agent. This being true, the following statements made in the opinion of Chief Justice Marshall in the case of Bank of the United States v. Planters' Bank, 9 Wheat. 904, 6 L. Ed. 244, are applicable to the facts of the instant case:

"The suit is against a corporation, and the judgment is to be satisfied by the property of the corporation, not by that of the individual corporators. The state does not, by becoming a corporator, identify itself with the corporation. The Planters' Bank of Georgia is not the state of Georgia, although the state holds an interest in it. It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus many states of this Union who have an interest in banks are not suable even, in their own courts; yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act."

From the fact that one owns all the stock of a private corporation it does not follow that the acts of the corporation are to be treated, not as its acts, but as the acts of its sole stockholder. Pullman Palace Car Co. v. Missouri Pacific R. Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Salas v. United States, 234 Fed. 842, 148 C. C. A. 440. The defendant was not, on the ground mentioned, exempt from the liability asserted against it.

[5] It is not material to inquire whether the defendant, in conducting the store or commissary in which the plaintiff was hurt, was exercising a power conferred by its charter. A corporation cannot escape liability for negligent conduct of a business in which it engages by showing that it was not authorized to carry on that business.

[6] The defendant was not entitled to have the jury instructed to find in its favor on the ground of the absence of evidence tending to prove the negligent conduct alleged. There was evidence tending to prove that the defendant's employés so oiled the floor of the store as to make it dangerously slippery, and that the plaintiff, Mrs. Curran,

while in the store as a customer, was injured in consequence of such negligence. Under the law in force in the Canal Zone the defendant was liable for such negligence. Panama R. Co. v. Bosse, 249 U. S. 41, 39 Sup. Ct. 211, 63 L. Ed. ——, Term, 1918.

Other rulings which are complained of are not such as to call for a discussion of them. The record does not show the commission of any reversible error.

The judgment is affirmed.