## LORD & BURNHAM CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, N. D. Illinois, E. D.   April 27, 1920.)

No. 33238.

1. **United States** ⬤⟳125—**Suit against Emergency Fleet Corporation not one against United States.**

Act Sept. 7, 1916 (Comp. St. § 8146a et seq.), establishing the United States Shipping Board and specifying its powers and duties, and authorizing it, in carrying out the provisions of that act, to form corporations for the purchase, construction, and operation of merchant vessels, and to subscribe for stock therein on behalf of United States, does not make a corporation so formed an instrumentality of the United States; nor is it made such by Urgent Deficiencies Appropriation Act June 15, 1917, or the presidential orders thereunder, and a suit against it is not one against the United States, and need not be brought in the Court of Claims.

2. **United States** ⬤⟳125—**Ownership of stock of corporation does not prevent suits against corporation.**

Ownership by the government of all the stock of a corporation does not affect its liability to suit the same as other corporations.

At Law.   Action by the Lord & Burnham Company against the United States Shipping Board Emergency Fleet Corporation.   On motion to dismiss for want of jurisdiction.   Motion overruled.

Dyrenforth, Lee, Chitton & Wiles, of Chicago, Ill., for plaintiff.

Charles F. Clyne, U. S. Dist. Atty., and John B. Boddie, Asst. U. S. Dist. Atty., and Harry F. Helwig, all of Chicago, Ill., for defendant.

PAGE, Circuit Judge.   This case was removed from the municipal court of the city of Chicago, and is an action brought to recover $60,525.86, damages claimed by reason of the cancellation by defendant of a contract dated October 25, 1918, for a specific number of ladders, etc., at an agreed price.

[1] This is a motion by defendant to dismiss for want of jurisdiction based on the claim that the Shipping Act of September 7, 1916 (39 Statutes at Large, p. 728 [Comp. St. § 8146a et seq.]), and the emergency shipping fund provision of the Urgent Deficiencies Appropriation Act, approved June 15, 1917 (40 Statutes at Large, p. 182), and the amendments thereof, and the executive orders issued by the President of the United States by virtue of said Urgent Deficiencies Appropriation Act, make the defendant merely a governmental instrumentality, and that the action is, in effect, against the United States, and is not authorized by law.

The Shipping Act is entitled "An act to establish a United States Shipping Board for the purpose (a) of encouraging, developing, and creating a naval auxiliary and naval reserve and a merchant marine to meet the requirements of the commerce of the United States with its territories and possessions and with foreign countries; (b) to regulate carriers by water engaged in the foreign and interstate commerce of the United States; and (c) for other purposes" (indicating letters are the court's).   The first four sections deal with definitions and the

organization plan of "the board." By "the board," section 3 (section 8146b) says is meant the United States Shipping Board. Section 5 (section 8146c) provides:

"That the board, with the approval of the President, is authorized to have constructed and equipped in American shipyards and navy yards or else-where, * * * or to purchase, lease, or charter, vessels suitable, as far as the commercial requirements of the marine trade of the United States may permit, for use as naval auxiliaries or army transports, or for other naval or military purposes, and to make necessary repairs on and alterations of such vessels."

Section 6 (section 8146cc) provides for the further acquisition of vessels by "the board," viz. vessels belonging to the War or Navy Department that are suitable for commercial uses and not required for military or naval use in time of peace, and also those owned by the Panama Railroad Company and not required in its business. Section 9 (section 8146e) provides that all such vessels, while employed solely as merchant vessels, shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner or otherwise. In discussing section 9, the court said:

"The basic intention seems clear, viz. that merchant vessels should gain no exemption from the ordinary legal liabilities because of any interest which the United States might have in them." The G. A. Flagg (D. C.) 256 Fed. 854. See, also, In re Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962 (June 2, 1919).

Section 11 (section 8146f) provides that:

"The board, * * * to carry out the purposes of this act, may form under the laws of the District of Columbia one or more corporations for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States. The total capital stock thereof shall not exceed $50,000,000. The board may, for and on behalf of the United States, subscribe to, purchase, and vote not less than a majority of the capital stock of any such corporation, and do all other things in regard thereto necessary to protect the interests of the United States and to carry out the purposes of this act."

It is then provided that "the board," with the approval of the President, may sell any or all of the stock of the United States in such corporation, but at no time shall it be a minority stockholder therein. The same section also provides that:

"At the expiration of five years from the conclusion of the present European war the operation of vessels on the part of any such corporation in which the United States is then a stockholder shall cease and the said corporation stand dissolved. * * * All stock in such corporations owned by others than the United States at the time of dissolution shall be taken over by the board at a fair and reasonable value. * * * In case of disagreement, such value shall be determined in the manner provided in section 10" (which is by appraisers).

The Shipping Act provides no jurisdiction in which controversies may be litigated, except the provision relating to the enforcement by action in the United States courts of orders of the board (sections 29, 30, 31 [sections 8146nn, 8146o, 8146oo]), and except that section 10 (section 8146ee) provides that disputes growing out of the taking by

the President of vessels for naval or military purposes may be settled by appraisers. If the Emergency Fleet Corporation was a mere instrumentality of the United States, performing only governmental functions, an action against it would be in effect an action against the United States, that could only be maintained in some manner prescribed by statute.

[2] If, on the other hand, the corporation was only used for the purpose of forwarding the commercial shipping interests of the country, it would be subject to suit the same as any other corporation. Bank of the U. S. v. Planters' Bank, 9 Wheat. 904, 6 L. Ed. 244; Panama R. Co. v. Curran et al., 256 Fed. 772, 168 C. C. A. 114. Ownership by the government of all of the stock of a corporation does not change the situation. It remains a corporation just the same as though it had a dozen or more stockholders. Pullman's Palace Car Co. v. Mo. Pac. Ry. Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Bank of the U. S. v. Planters' Bank, supra; Panama R. Co. v. Curran et al., supra.

One of the objections to the Shipping Act before Congress was that in the bill there was a tendency toward government ownership, and, in refutation of that charge, it was explained to Congress that:

"If there is in this bill any feature of government ownership, it contains in itself the means for the automatic elimination of all elements of government ownership." May 16, 1916, Cong. Rec. p. 9163.

Then follows a rather elaborate explanation of the provisions of section 11, above cited, from which it is clearly apparent that it was intended that individuals might become subscribers to a part or all of the capital stock of any such corporation, and that the government's only control over it would be the same as that of a private owner of a majority of the stock, if it remained a stockholder at all. The language of section 11, providing for the creation of the defendant, limits the powers of the board to the formation of a corporation under the general laws of the District of Columbia for a limited and a purely commercial purpose, viz. to deal merely with merchant vessels in the commerce of the United States. I am of opinion that the language of the act justified the interpretation before Congress.

A note under section 11 in a 1917 government printed copy of the Shipping Act, handed this court, says the defendant "has been incorporated in accordance with this provision." It must be assumed, from the very fact of the provision for the incorporation of the defendant, that it was intended that it should be a real corporation, with all its powers, rights, and obligations intact. To hold otherwise would be to hold that Congress did the wholly purposeless thing of incorporating a corporation, which should not be a corporation at all, to perform, under the board, things which, as a governmental agency, the board had ample authority to do.

It is thought that subsequent legislation and executive orders, referred to in defendant's motion, affect the question here raised, viz. the Urgent Deficiencies Appropriation Act approved June 15, 1917, and executive orders relating thereto and to some extent involving the defendant. The emergency shipping fund provision of the Urgent Deficiencies Appropriation Act gave to the President very broad powers

with reference to placing orders for such ships and materials as the necessities of the government might require, and authorized the President to exercise those powers and spend the moneys appropriated through such agency or agencies as he should determine, but that act does not in any way refer to the defendant, except as follows:

"Provided, that all money turned over to the United States Shipping Board Emergency Fleet Corporation may be expended as other moneys of said corporation are now expended." Section 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆d).

This indicates not an intention to change the corporation, but does clearly indicate that in expending such moneys it should act as a corporation.

The Shipping Act was under consideration by the Supreme Court in Re Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962, decided June 2, 1919. It was there contended by the government that the Lake Monroe did not come within the terms of the Shipping Act at all; but the court said that the argument adduced in support of that contention would render the powers conferred upon the Shipping Board and the Fleet Corporation by the executive order of July 11, 1917, absolute powers, subject to no regulation except such as the President might from time to time prescribe. The court further said that it was not believed that Congress intended to restrict the President to those agencies (the board and the Fleet Corporation) or—

"that they intended he should exercise the powers arbitrarily. And when in fact he designated the Fleet Corporation to exercise those powers so far as they pertained to the construction of vessels and the requisitioning of vessels in process of construction, and the Shipping Board so far as they applied to the operation, management, and disposition of vessels, it is to be presumed that he did so because of the general powers that already had been conferred upon them by law, and because they were subject to the regulatory provisions that Congress had enacted."

And again, referring to section 9 of the act, the court said:

"That Congress considered this provision and the other provisions of the act of 1916 as having living force and general application after the executive order of July 11, 1917, is manifest from the amendatory act approved July 15, 1918. * * * These reports and the accompanying bills show that the Shipping Board was understood to be executing all its powers under the regulations prescribed by the act of 1916."

If, as the court there found, the act of 1916 had living force and general application after the executive order of July 11, 1917, relied on here, then it must be held that the defendant was yet a corporation, with its duties and obligations intact. That Congress never theretofore considered the defendant a government establishment seems clear from the language of the Urgent Deficiencies Bill for the year ending June 30, 1918, where, treating of the question of wages of civil employés, there is found this provision:

"That the United States Shipping Board Emergency Fleet Corporation shall be considered a government establishment for the purposes of this section." Section 7, chap. 79, 40 Statutes at Large, p. 384 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 251b).

It is not to be believed, except on the clearest evidence, that Congress, when it authorized the incorporation of the defendant under the general laws of the District of Columbia, to forward a specific, limited, and purely commercial undertaking, intended to take away all those corporate rights, and leave those who might deal with the corporation no place to adjudicate those rights, except in and through the slow and cumbersome processes of the Court of Claims, where over $10,000 is involved.

Nor is it to be believed that it was intended that a corporation, whose whole capital may, under the act, be owned by private individuals, could only be proceeded against in a jurisdiction established solely for the adjustment of claims against the United States.

I am of the opinion that the defendant is suable in this court, and the motion is overruled.