## INGRAM DAY LUMBER CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, S. D. Mississippi, S. D.   July 19, 1920.)

1. **Removal of causes** ☞21—**Suit not removable because against governmental agency.**

   A suit involving less than $3,000 is not removable on the ground, alleged in the petition for removal, that the liability sought to be enforced was incurred by defendant as agent for the United States.

2. **Courts** ☞289—**Federal court has jurisdiction of suit against Emergency Fleet Corporation; "law regulating commerce."**

   Shipping Board Act Sept. 7, 1916 (Comp. St. § 8146a et seq.), is a law regulating commerce, and under Judicial Code, § 24, par. 8 (Comp. St. § 991), a suit against the United States Shipping Board Emergency Fleet Corporation, created under section 11 of said act (Comp. St. § 8146f), is cognizable in a federal court, regardless of the amount in controversy.

3. **Shipping** ☞3½, New vol. 8A Key-No. Series—**Emergency Fleet Corporation subject to suit.**

   The United States Shipping Board Emergency Fleet Corporation is by the law of the District of Columbia, under which it is organized, made subject generally to civil suits, and whether in the transaction out of which a suit arose it was acting solely as a governmental agency, and is therefore under the law exempt from personal liability, is a question of fact to be determined on the proofs.

4. **United States** ☞125—**Suit against Emergency Fleet Corporation not suit against.**

   That the United States is a stockholder in the United States Shipping Board Emergency Fleet Corporation does not render a suit against it to enforce a contract made by it a suit against the United States.

At Law.   Action by the Ingram Day Lumber Company against the United States Shipping Board Emergency Fleet Corporation.   On motion by plaintiff to remand to state court, and motion by defendant to dismiss.   Both motions denied.

White & Ford, of Gulfport, Miss., for plaintiff.

Julian P. Alexander, U. S. Dist. Atty., of Jackson, Miss., for defendant.

HOLMES, District Judge.   The suit was filed in the chancery court of Jackson county, Miss., by the Ingram Day Lumber Company, a corporation organized under the laws of the state of Wisconsin, against the United States Shipping Board Emergency Fleet Corporation, organized under the corporation laws enacted by Congress for the District of Columbia, in pursuance of section 11 of the Shipping Act (Comp. St. § 8146f), providing that the same shall be chartered under the laws of the District of Columbia.   Service of process was obtained by attachment against the lands in Mississippi of the defendant, as a nonresident corporation, under the provisions of a state statute so permitting.   The suit seeks to recover a balance of $906.26 alleged to be due the plaintiff for shipbuilding material delivered to the defendant under an express contract for the payment of stipulated prices.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Within the time and in the manner provided by the removal statutes a petition and bond were filed by the United States Shipping Board Emergency Fleet Corporation, praying for the removal of the cause to the United States District Court for the Southern District of Mississippi, and alleging the following grounds of removal, which I quote:

"(1) That this is a suit of a civil nature, at common law or in equity, and arises under the laws of the United States.

"(2) That the matter in dispute does not exceed the sum or value of $10,000, and the District Court of the United States has original jurisdiction over said suit.

"(3) That the defendant, the United States Shipping Board Emergency Fleet Corporation, is a corporation duly incorporated and organized under the laws of Congress enacted for the District of Columbia by the Act of March 3, 1901, chapter 854, in pursuance of the Shipping Act of September 7, 1916, and by virtue of the executive order of the President of the United States, dated July 11, 1917, issued in pursuance of the emergency shipping fund provision of the Urgent Deficiencies Act of Congress, approved June 15, 1917, was at the time of, and in the transactions out of which this controversy grew, and still is, the appointee of the President of the United States and the representative of the United States, and that this is a suit against the United States."

Motion is made by the plaintiff to remand said cause to the chancery court of Jackson county, Miss., on the ground, among others, that the same is not removable, as the suit is not one of which the District Court of the United States has original jurisdiction.

With said motion to remand is filed an answer to the defendant's petition for removal, denying that the Fleet Corporation was organized under the laws of Congress enacted for the District of Columbia by the Act of March 3, 1901, chapter 854, in pursuance of the Shipping Act of September 7, 1916, and alleging that the defendant is an ordinary corporation organized under the general laws of the District of Columbia. The answer also denies that by virtue of the executive order of the President of the United States, dated July 11, 1917, issued in pursuance of the emergency shipping fund provision of the Urgent Deficiencies Act of Congress, the defendant was at the time of and in the transactions out of which the controversy herein arose the appointee of the President of the United States, and denies that this suit is one against the United States. It alleges that the material, the price of which is here sued for, was delivered, at the request of the defendant, to various firms, corporations, and individuals building ships on their own account. It denies that the United States was in any way connected with the transactions involved in this suit, or that it had any dealings with, or seeks any redress against, the government of the United States, but only against the defendant as an ordinary corporation.

Motion was filed by the United States attorney for the Southern district of Mississippi to dismiss the cause, on the ground that this suit is in effect and in fact a suit against the United States without its consent, and that neither the state court nor this court had or has any jurisdiction in the premises. By agreement of counsel the motions of plaintiff to remand and of defendant to dismiss were heard and sub-

mitted at the same time for decision. They will be taken up in the order named.

## 1. On Motion to Remand.

The removing defendant, the United States Shipping Board Emergency Fleet Corporation, was incorporated under the laws of Congress enacted for the District of Columbia. Act March 3, 1901, c. 18, subc. 4, § 605 et seq. (31 Stat. 1189, 1284, 1285, c. 854). The incorporation of this defendant was pursuant to the United States Shipping Board Act of September 7, 1916, c. 451, § 11, 39 Stat. 731 (Comp. St. § 8146f), which provided that the Shipping Board, if in its judgment necessary to carry out the provisions of the act, might form, under the laws of the District of Columbia, one or more corporations for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States. The capital stock of such corporation authorized to be formed was not to exceed $50,000,000, and the Shipping Board was authorized on behalf of the United States to subscribe to, purchase, and vote not less than a majority of such capital stock, and to do other things in regard thereto necessary to protect the interests of the United States and to carry out the purposes of the act. It was further provided that the board, with the approval of the President, might sell any or all of the stock of the United States in such corporation, but at no time should the United States become a minority stockholder therein. The act also provided that at the expiration of five years from the conclusion of the European War the operation of vessels on the part of any corporation in which the United States might then be a stockholder should cease, and the corporation stand dissolved. The date of the conclusion of the war was to be declared by proclamation of the President.

It will be noted that only in case the United States should "then" be a stockholder in such corporation should its operations cease and the same stand dissolved. It was clearly contemplated by the act that the United States might sell all its stock to private individuals, in which event the corporation might exist perpetually under the laws enacted for the District of Columbia. In case, however, of the dissolution of the corporation at the expiration of five years from the termination of the European War, provision was made for the disposition of its vessels and other property on the best available terms after the payment of all debts and obligations and a deposit of the proceeds thereof in the treasury of the United States. All stock in such corporation owned by others than the United States at the time of the dissolution was required to be taken over by the board, at a fair and reasonable value, and paid for with funds to the credit of such board. In case of disagreement such value was to be determined by appraisers, one to be appointed by the board, one by the person interested, and a third by the two so appointed; the finding of such appraisers to be final and binding upon both parties.

Section 607 of the Act of March 3, 1901, under which the defendant was incorporated pursuant to the provisions of the above Shipbuilding Act, provides that a corporation so organized—

"shall be a body politic and corporate in fact and in name, by the name stated in such certificate, and by that name have succession and be capable of suing and being sued in any court of law or equity in the district, and they and their successors may have a common seal and make and alter the same at pleasure," etc.

Being so organized, it seems too clear for disputation that the defendant corporation is in general capable of suing and being sued, regardless of whether part or all of its stock is owned by the United States. Bank of United States v. Planters' Bank, 9 Wheat. (U. S.) 904, 6 L. Ed. 244; Panama R. Co. v. Curran, 256 Fed. 768, 168 C. C. A. 114.

The first ground in the petition for removal is that this suit arises under the laws of the United States. It is well settled that suits brought against corporations of the United States, created by and organized under acts of Congress, are suits "arising under the laws of the United States."

Under paragraph 1 of section 24 of the Judicial Code (Comp. St. § 991) the District Courts have original jurisdiction of all suits of a civil nature at common law or in equity, "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States." In the case of Union Timber Products Co. v. United States Shipping Board Emergency Fleet Corporation (D. C.) 252 Fed. 320, it is held that an action against the Fleet Corporation upon an alleged contract for the building of ships, which it was not allowed to build, is an action arising under the Constitution and laws of the United States, and is not subject to remand from the federal District Court to the state court. Numerous authorities are cited, but the amount there in controversy does not appear. This is decisively important. It is to be presumed that it was in excess of $3,000, the jurisdictional amount. But the amount in controversy in this case is not sufficient to give the District Court original jurisdiction on the ground that the suit arises under the laws of the United States.

The next ground of jurisdiction which we shall consider is the allegation of the defendant in its petition for removal that it is a corporation organized as previously outlined, and by virtue of an executive order of the President of the United States, dated July 11, 1917, issued in pursuance of the emergency shipping fund provision of the Urgent Deficiencies Act of Congress, approved June 15, 1917, was at the time of and in the transactions out of which this controversy grew, and still is, the appointee of the President of the United States. In other words, the allegation is equivalent to a plea of nonliability, on the ground that the defendant was acting as the agent of another, and not for itself, and that therefore the liability, if any, is that of another, and not of the defendant. Act June 15, 1917, c. 29, 40 Stat. 182, authorized the President:

"(a) To place an order with any person for such ships or material as the necessities of the government, to be determined by the President, may require during the period of the war, and which was of a nature, kind and quantity usually produced or capable of being produced, by such person."

The act further provided that compliance with such orders should be obligatory and should take precedence over all other orders and contracts placed with such person, and in case of failure of any person to comply therewith or to give the United States preference in the execution thereof, the President was authorized to requisition the same. There was also a provision for compensation to be determined by the President, but if the amount of such compensation, so determined by the President, was unsatisfactory to the person entitled to receive the same, such person was to be paid 75 per centum of the amount so determined by the President, and "shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section 24, paragraph 20, and section 145 of the Judicial Code." The act further granted authority to the President to execute the powers through others, and clearly contemplated that he might do so through the defendant, as follows, to wit: ·

"The President may exercise the power and authority hereby vested in him, and expend the money herein and hereafter appropriated through such agency or agencies as he shall determine from time to time: Provided, that all money turned over to the United States Shipping Board Emergency Fleet Corporation may be expended as other moneys of said corporation are now expended. All ships constructed, purchased, or requisitioned under authority herein, or heretofore or hereafter acquired by the United States, shall be managed, operated, and disposed of as the President may direct."

Pursuant to that part of the act just quoted, on July 11, 1917, the President issued the following executive order:

"By virtue of authority vested in me in the section entitled 'Emergency Shipping Fund' of an act of Congress entitled 'An act making appropriations to supply urgent deficiencies in appropriations for the military and naval establishments on account of war expenses for the fiscal year ending June thirtieth, nineteen hundred and seventeen, and for other purposes,' approved June 15, 1917, I hereby direct that the United States Shipping Board Emergency Fleet Corporation shall have and exercise all power and authority vested in me in said section of said act, in so far as applicable to and in furtherance of the construction of vessels, the purchase or requisitioning of vessels in process of construction, whether on the ways or already launched, or of contracts for the construction of such vessels, and the completion thereof, and all power and authority applicable to and in furtherance of the production, purchase, and requisitioning of materials for ship construction.

"And I do further direct that the United States Shippng Board shall have and exercise all power and authority vested in me in said section of said act, in so far as applicable to and in furtherance of the taking over of title or possession, by purchase or requisition, of constructed vessels, or parts thereof, or charters therein, and the operation, management and disposition of such vessels, and of all other vessels heretofore or hereafter acquired by the United States. The powers herein delegated to the United States Shipping Board may, in the discretion of said board, be exercised directly by the said board or by it through the United States Shipping Board Emergency Fleet Corporation, or through any other corporation organized by it for such purpose.

"[Signed] Woodrow Wilson."

[1] This suit arises ex contractu for the purchase price of shipbuilding material, and the allegation in the petition for removal is that the defendant was acting as the agent of the United States under

the law and executive order just quoted. If this allegation is true, the liability is that of the United States government, and not of the defendant. On the motion to remand, this allegation in the petition for removal must be taken as true, and the question is: Does it furnish sufficient grounds for removal?

The right of removal is purely statutory, and I fail to find in the removal statutes any provision permitting the agent or delegate of the United States to remove to the District Court a suit in which it is sought to hold such agent or delegate personally liable on any act or transaction arising out of such agency (where the requisite amount is not involved). Of course, if the agent who is sued can show that he was not acting, or pretending to act for himself, and did not bind himself personally, but bound only his principal, such facts would constitute a legal defense to the suit.

Section 33 of the Judicial Code (Comp. St. §. 1015) permits any officer appointed under or acting by authority of any revenue law of the United States when sued or prosecuted on account of any act done under color of his office, or of any such law (or any officer of either House of Congress), to remove such civil suit or criminal prosecution to the United States District Court; but there is no right of removal in a case not otherwise cognizable in the District Court, where a suit is brought against an agent instead of against the principal, on the ground that the principal, if sued, would have to be sued in the federal court. Therefore, of and by itself, the mere allegation that the defendant in this case was acting in the transaction out of which the suit arose as the agent of the United States, and that the suit ought to be against the United States, is not sufficient to remove to the federal court on that ground alone a case (of the amount here involved) in which it is sought to hold that agent personally liable on a contract.

[2] But, although the reasons alleged as grounds for removing this case to the District Court are insufficient, yet, in support of said reasons, the removing defendant alleges facts which, if true, are sufficient in my judgment to give the District Court original jurisdiction. Those facts have been heretofore set out, and are to the effect that the defendant is a corporation incorporated in pursuance of section 11 of the act approved September 7, 1916 (39 Stat. p. 728, c. 451). According to its title and the general provisions, this was an act to establish the United States Shipping Board, for the purpose of encouraging, developing, and creating a naval auxiliary and naval reserve and a merchant marine *to meet the requirements of the commerce of the United States* with its territories and possessions and with foreign countries, to regulate carriers by water engaged in the foreign and interstate commerce of the United States, and for other purposes. This act only applies to interstate commerce and in section 33 (Comp. St. § 8146pp) it is expressly provided that it shall not be construed to apply to intrastate commerce. Under section 11 of said act, it is provided:

"That the board, if in its judgment such action is necessary to carry out the purposes of this act, may form under the laws of the District of Columbia one or more corporations for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States." Section 8146f.

The entire act is distinctly and exclusively a law regulating interstate commerce. Any suit against any corporation formed under said section 11 is clearly a suit arising under a law regulating commerce.

Paragraph 8 of section 24 of the Judicial Code (Comp. St. § 991) confers upon the District Courts original jurisdiction, regardless of the sum or value of the matter in controversy, as follows:

"Eighth. Of all suits and proceedings arising under any law regulating commerce, except those suits and proceedings exclusive jurisdiction of which has been conferred upon the Commerce Court."

The Commerce Court was abolished, and its jurisdiction transferred to the several District Courts, by Act Oct. 22, 1913 (Comp. St. § 992). Under the paragraph just quoted it seems very clear to me that any suit against the United States Shipping Board Emergency Fleet Corporation is a suit arising under a law regulating commerce, and is therefore cognizable in the federal courts, regardless of the amount in controversy.

From these considerations it follows that the motion to remand should be overruled.

## 2. On Motion to Dismiss.

[3] It has been shown that in general the defendant is capable of suing and being sued. It claims in this case that in the transaction out of which the suit arose it was acting as the agent of the United States; but this is denied by the plaintiff. This court cannot take judicial cognizance of the nature of the transaction out of which this suit arose. Neither can it know, without proof, what is stated in some of the cases, that all of the stock of this concern is owned entirely by the United States, and that it is operated solely and exclusively as a governmental agency. Under the law, part or all of its stock is susceptible of private ownership, and it may engage in general commercial pursuits, as any other private corporation. It may act for itself, or as agent of another. It may act as agent of a private individual, or as delegate of the government. The capacity in which it was acting in the transactions giving rise to this suit is a question of fact, and not of law. If, on the proof, the facts should show that, in the transactions out of which this suit arose, the defendant was acting as the delegate of the President under the executive order above quoted, I think this would be a sufficient defense. Huffcut, in his work on Agency, 2d Ed., par. 203, at page 254, says:

"The rules governing the liabilities of a private agent are not generally applicable to public agents. There is a strong presumption that a public agent does not intend to bind himself personally, or to become a party to the contract. Even a contract under seal, made in the name of a public agent, will be construed to be the contract of the government, and not of the agent, where, in case of a private agency, such a result would be impossible; a fortiori, if the contract be not under seal. But the presumption in the agent's favor may be overcome by clear proof of an intent to render himself personally liable"—citing Hodgson v. Dexter, 1 Cranch, 345, 2 L. Ed. 130; Knight v. Clark, 48 N. J. Law. 22, 2 Atl. 780, 57 Am. Rep. 534; Macbeath v. Haldimand, 1 T. R. 172; Walker v. Swartwout, 12 Johns. (N. Y.) 444, 7 Am. Dec. 334; Savage v. Gibbs, 4 Gray (Mass.) 601; Parks v. Ross, 11 How. 362, 13 L. Ed. 730; Clutterbuck v. Coffin, 3 M. & G. 842; Auty v. Hutchinson, 6

267 F.—19

C. B. 266; Simonds v. Heard, 23 Pick. (Mass.) 120, 34 Am. Dec. 41; Brown v. Bradlee, 156 Mass. 28, 30 N. E. 85, 15 L. R. A. 509, 32 Am. St. Rep. 430.

In Hodgson v. Dexter, supra, Chief Justice Marshall says:

"It is too clear to be controverted that, where a public agent acts in the line of his duty and by legal authority, his contracts, made on account of the government, are public and not personal. They inure to the benefit of, and are obligatory on, the government, not the officer. A contrary doctrine would be productive of the most injurious consequences to the public, as well as to individuals. The government is incapable of acting otherwise than by its agents, and no prudent man would consent to become a public agent, if he should be made personally responsible for contracts on the public account."

[4] As to the other ground of dismissal, to wit, that this is in fact a suit against the United States, I do not think this ground is supported by the record, which says clearly it is a suit against the United States Shipping Board Emergency Fleet Corporation (a distinct legal entity), organized as above set forth. True, the United States may have a dual relation to it: (1) That of stockholder and corporation; (2) principal and agent. It has no other connection or relation to the government, and certainly it is not the United States, which has not been made a defendant in this case in any manner known to the law. As said in 9 Wheat. (U. S.) 908 (6 L. Ed. 244):

"The government of the Union held shares in the old Bank of the United States; but the privileges of the government were not imparted by that circumstance to the bank. The United States was not a party to suits brought by or against the bank in the sense of the Constitution. So with respect to the present bank. Suits brought by or against it are not understood to be brought by or against the United States. The government, by becoming a corporator, lays down its sovereignty, so far as respects the transactions of the corporation, and exercises no power or privilege which is not derived from the charter."

Under paragraph 20 of section 24 of the Judicial Code (Comp. St. § 991), this court would have jurisdiction of a claim upon a contract of the nature and for the amount here involved; but there is a well-defined statutory proceeding for instituting suits against the government upon claims of such a nature, and that proceeding has not been followed here. It is clearly contemplated by the emergency shipping fund provision of the Urgent Deficiencies Act approved June 15, 1917, that any suit based upon any claim for material furnished shall be brought in the manner provided for by section 24, par. 20, and section 145 of the Judicial Code (Comp. St. §§ 991, 1136). In addition thereto running through the entire National Defense Acts are the uniform provisions that suits shall be brought against the United States as provided for by the sections just quoted. See 39 Stat. p. 1193, par. "d" (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆c); 40 Stat. p. 182, c. 29, passed June 15, 1917, amended by Act April 22, 1918, c. 62, 40 Stat. 535 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆d); 40 Stat. p. 535, c. 62, § 3, April 22, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆dd); 40 Stat. p. 438, c. 19, passed March 1, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t).

A cursory review of these acts will demonstrate the clearly expressed intention of Congress for suits of this character to be brought

against the United States. Preliminarily let us note that the Shipping Board was established before we entered the war (September 27, 1916), and was an act regulating commerce. The corporations authorized to be formed by said board to carry out the purposes of the Shipping Act were to be formed under the Code of Laws enacted for the District of Columbia, which was a still older act (March 3, 1901).

After our entry into the war, the first act showing an intention by Congress for suits by persons dissatisfied with the compensation allowed them for war materials to be brought against the United States, was under the naval emergency fund provision of March 4, 1917, wherein the President was granted authority to order ships or war materials from any person. Provision was made for compensation to be determined by the President, and if the amount so determined was unsatisfactory to the persons entitled to receive the same, such persons were to be paid 50 per cent. of the amount and to be entitled to sue the United States to recover such further sum as added to said 50 per cent. would make just compensation, in the manner provided for by section 24, par. 20, and section 145 of the Judicial Code. 39 Stat. p. 1193, par. (d).

In Act June 15, 1917, making appropriations to supply urgent deficiencies on account of war expenses, the President was authorized to order ships or materials, etc., and to determine the compensation therefor. In case of dissatisfaction, the person dissatisfied was to be paid 75 per centum of the amount so determined by the President, and to be entitled to sue the United States to recover such further sum as, added to said 75 per centum, will make up such sum as will be just compensation therefor, in the manner provided for by section 24. par. 20, and section 145 of the Judicial Code. Then follows authority to the President to act through such agencies as he might determine, and provision that all money turned over to the United States Shipping Board Emergency Fleet Corporation should be expended as other funds of said corporation. It is further provided that all ships acquired hereunder by the United States should be managed, operated, and disposed of by the President. 40 Stat. pp. 182, 183.

It is important to remember this provision in connection with the provision in section 9 of the Shipping Act (Comp. St. § 8146e) with reference to the liability to arrest of merchant vessels, and in so doing we shall see why there is a distinction between suits against vessels operated by the President and materials ordered by the President. We shall observe that the law itself makes the distinction, by providing liability of vessels to arrest, and by further providing that suits for materials ordered by the President shall be against the United States under the quoted provisions of the Judicial Code. (Since writing this paragraph, my attention has been called to Act March 9, 1920, authorizing suits against the United States in admiralty in certain cases. This act, however, does not affect the question in this case.)

In Act March 1, 1918, Congress itself delegates certain powers to the Fleet Corporation with reference to the purchase of land, houses, and buildings. For the property so acquired it is provided that the Fleet Corporation shall determine and make just compensation, and,

if the amount so determined is unsatisfactory to the person entitled to receive the same, such person shall be paid 75 per centum of the amount so determined, and shall be entitled to sue the United States to recover such further sum as, added to said 75 per centum, will make such an amount as will be just compensation for the property or interest taken, in the manner provided by section 24, par. 20, and section 145 of the Judicial Code. 40 Stat. c. 19, p. 438.

By Act April 22, 1918, the President was authorized to acquire certain transportation systems for the transportation of shipyard and plant employés, and to exercise the powers vested in him through the several departments of the government, and through such agent or agencies as he should from time to time determine. The compensation for the property so acquired was to be determined by the President, and, if not satisfactory to the persons entitled to receive the same, such persons were to be paid 75 per centum thereof, and to be entitled to sue the United States to recover further sums, in the manner provided by section 24, par. 20, and section 145 of the Judicial Code. 40 Stat. c. 62, p. 535.

In every act where the President or the Fleet Corporation is authorized to acquire materials, ships, or other property, provision for compensation is made, to be determined either by the President or the Fleet Corporation, and, if dissatisfied with the amount so determined, the person entitled to receive the same is expressly given the right to sue the United States in the manner provided by section 24, par. 20, and section 145 of the Judicial Code. It would be impossible to express more clearly the intention of Congress that, in every case where the United States acquired materials or other property, the party entitled thereto was to receive just compensation, to be determined by the agent of the government, and in case of dissatisfaction suit therefor should be brought against the United States as provided in the Judicial Code. In other words, when the Fleet Corporation is acting as the agent of the United States, suit is to be brought against the United States, and not against it. There is no more reason to bring suit against the Fleet Corporation, when it was acting as the authorized delegate of the government in the purchase of materials, than there would be to bring suit against the President when he was acting in a similar capacity.

By a provision of the Sundry Civil Appropriation Act of July 1, 1918, the Secretary of the Treasury was authorized and directed to cause an audit to be made of the financial transactions of the United States Shipping Board Emergency Fleet Corporation, under such rules and regulations as he should prescribe. 40 Stat. 651 (Comp. St. Ann. Supp. 1919, § 8146fff). This was simply a provision by a principal to have audited the financial transactions of its agent.

As the pleadings have not yet been completed in this case, I believe it would simplify matters, and be of much assistance to counsel in making up the issues of fact and taking the evidence thereon, if I should make a brief summary of conclusions reached after an examination of the statutes and decisions. In doing this, some of the utterances will necessarily be dictum, as I do not know, but can only surmise, what the real issues will be when the pleadings have been filed; but my object

is merely to assist counsel in framing the issues and producing the evidence. Up to this time no evidence has been introduced; consequently, on the motion to remand, I take as true the facts as shown by the bill, including the petition of the defendant to remove, whereas, on the motion to dismiss, I take as true merely the facts set up in the plaintiff's bill of complaint.

## Summary.

1. The Fleet Corporation, when acting for itself, is capable of suing and being sued as an ordinary corporation.

2. Any suit against it, regardless of the amount or value in controversy, must be in the federal courts, because it was organized under a law regulating commerce.

3. When acting as the delegate of the United States, or the appointee of the President, in the purchase of materials or ships, it is not liable in its corporate capacity; but such suit must be against the United States.

4. Ships purchased or constructed by it for the United States are to be operated by the President, and when operated through the agency of the Shipping Board are liable to arrest under section 9 of the act establishing such board.

5. Property acquired by the Fleet Corporation with the funds and as the agent of the United States, even though held in the name of said Fleet Corporation, is the property of the United States, and exempt from state taxation. U. S. v. Coghlan (D. C.) 261 Fed. 425.

6. The property of such corporation, even though the United States may be interested therein as a stockholder, may be subjected by legal process to the payment of its debts; but property of the United States, which it holds as a government agent, and which simply stands in the name of the Fleet Corporation, is not liable for the debts of such corporation.

7. If the relation of the government to the corporation is merely that of stockholder, then the corporation is liable for its acts, because its transactions are those of the corporation, and not of the government. Panama R. Co. v. Curran, 256 Fed. 768, 168 C. C. A. 114, is an illustration of this principle.

8. But, if the relation is that of principal and agent, then the corporation, when it acts within the scope of its authority, is not liable, because such authorized acts are the acts of the government, and not the corporation. Ballaine v. Alaska N. Ry. Co. (U. S., Intervener) 259 Fed. 183, 170 C. C. A. 251, is illustrative of this principle.

Since writing the above I have read Act March 9, 1920, authorizing suits against the United States in admiralty in certain cases. This act was evidently intended to meet the decisions in the Lake Monroe, The G. A. Flagg, The Florence H., and similar cases. 258 Fed. (D. C.) 77; 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962; 256 Fed. (D. C.) 852; 248 Fed. (D. C.) 1012; and Ex parte Whitney Steamboat Co., 249 U. S. 115, 39 Sup. Ct. 192, 63 L. Ed. 507. Under this statute, in lieu of a proceeding in rem against government-owned vessels, provision is made for libels in personam against the United States in ad-

miralty cases, even though sounding in tort. In the case at bar the United States has not intervened to claim the real ownership of the property attached, nor has it been made a party, so that a personal judgment might be rendered against it.

In conclusion, I might say that the law of this case will arise out of the facts. "Ex facto jus oritur." Some of the facts, like the existence of the war and the executive order of the President, the court can take judicial knowledge of; but the determinative fact, as to whether in this particular transaction the defendant was acting for itself as a private corporation, or for the United States as a public agent, the court can only know from the evidence, because under the law and its charter it might have been acting in either capacity. In Commonwealth Finance Corporation v. Landis (Emergency Fleet Corporation, Garnishee) 261 Fed. (D. C.) 440, it is said, at page 442:

"The Fleet Corporation may be acting as such agent of the United States, or may not be so acting, or it may so act in some of its activities, and not in others. If follows from this that, when it is acting as the United States, and as to such of its property and assets as are in the actual use of the United States, neither it as such agent nor such property can be drawn into or jeopardized by disputes between private parties. It would also follow, however, that in so far as it is acting as a private corporation, and in so far as its property and assets are and are used as its private property, it is not immune from the liabilities and responsibilities which are imposed by law upon litigants."

Later in the same opinion it is said:

"This proposition necessarily involves the thought that there is a question to be determined" (N. B.—A question of fact) "and this again necessarily carries the further thought that the corporation is not immune from process, because otherwise nothing other than such immunity could be determined. It may be that, if any one of these plaintiffs secures a final judgment against this corporation, he will be unable to enforce payment of the judgment because of the fact that there is no property out of the sale of which the judgment can be paid, other than either property of the United States or property which is in use by the United States for military purposes. The futility or hopelessness of execution process does not, however, deprive a litigant of judgment process."

An order will be entered overruling the plaintiff's motion to remand and the defendant's motion to dismiss.