PUGET SOUND MACHINERY DEPOT v. UNITED STATES SHIPPING
BOARD EMERGENCY FLEET CORPORATION.

SKINNER & EDDY CORPORATION v. SAME.

(District Court, W. D. Washington, N. D.   November 23, 1923.)

Nos. 7617, 7695.

1. Corporations ⬅️642(1)—Fleet Corporation held "doing business in state," and
subject to suit therein.
    Where the United States Shipping Board Emergency Fleet Corporation
rented and maintained offices, kept bank accounts, issued checks, and
operated a line of steamships in its own name, it was "doing business in
the state" where such offices were kept, and subject to suit therein.
    [Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Doing Business.]

2. Corporations ⬅️662—Fleet Corporation subject to suit in state where doing
business.
    The United States Shipping Board Emergency Fleet Corporation is
subject to suit, like any other corporation, in any state where it is
doing business.

At Law.   Actions by the Puget Sound Machinery Depot and by the
Skinner & Eddy Corporation against the United States Shipping Board
Emergency Fleet Corporation.   On motions by defendant to quash
service of summons.   Denied.

Bronson, Robinson & Jones, of Seattle, Wash., for plaintiff Puget
Sound Machinery Depot.

Hastings & Stedman and Donworth, Todd & Higgins, all of Seattle,
Wash., for plaintiff Skinner & Eddy Corporation.

MacCormac Snow, of Portland, Or., Chas. E. Allen and Clarence
L. Reames, both of Seattle, Wash., and O. P. M. Brown, of Washing-
ton, D. C., for defendant.

CUSHMAN, District Judge.   A number of motions in the two
above-entitled causes were heard together.   In each the plaintiff sued
upon contract in the state court.   The defendant removed both causes
to this court.   The defendant appears specially and moves to quash the
service of summons and dismiss, upon the ground that the defendant is
not doing business in this state, and was not at the time of service of
summons, and upon the further ground that the persons served were
not qualified under the law to accept service.

It is contended upon the part of the plaintiff in each suit that de-
fendant has entered a general appearance and cannot now be heard on
the motion to quash.   Owing to the conclusion reached upon the merits
of defendant's motions to quash, it is not necessary to determine wheth-
er defendant appeared generally, prior to filing its "special Appear-
ance."   In the one suit there is no record of the return of service of
summons; but it appears from the affidavits that in both cases service
was made upon A. R. Lintner, acting director, agent, and manager of
defendant.   This service was sufficient to confer jurisdiction, providing

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the defendant was, in fact, doing business in the district at the time of such service.

[1] Defendant's main contention is that it can only be sued in the District of Columbia, where it was incorporated; that it has not been doing business in this state; that such business as it does or has done, in the state of Washington, was as agent of the United States, and not for its own private gain or advantage. The affidavits show that offices were rented and occupied by the defendant in the city of Seattle; that in making rental arrangements the lessor was not informed that defendant was securing the lease other than as principal. It is shown that the defendant kept in its name deposits in Seattle banks upon which it, through one of its officers resident in Seattle, drew checks for the purchase of supplies in Seattle; that since the service of process in this cause the form of check given by the defendant has been changed by adding, after the words "United States Shipping Board Emergency Fleet Corporation," the word "Agent."

At the time of service, and prior thereto, on the streets in the city of Tacoma, street cars were operated bearing the designation "United States Shipping Board Emergency Fleet Corporation, owner"; that the cars were operated by the city of Tacoma under a conditional sale contract; that between ports in this district and Asiatic ports a line of steamships was and is being operated under the Merchant Marine Act of 1920 (41 Stat. 988); that the company selling the passenger and freight service thereon is the Admiralty Oriental Line. In its literature it is described as "managing agents, United States Shipping Board Emergency Fleet Corporation." It is so described in the forms of its bills of lading and passenger tariffs. Concerning the operation of these vessels, defendant has filed the affidavit of Joseph E. Sheeday, vice president of the United States Shipping Board Emergency Fleet Corporation, in charge of the operations of the corporation. In his affidavit, among other things, he says:

"That pursuant to the power and authority conferred upon the United States Shipping Board Emergency Fleet Corporation by law and by said resolution of September 30, 1921, passed and adopted by the United States Shipping Board, and to carry out the will and intent of Congress as set forth in section 12 of said Merchant Marine Act 1920, the corporation did, on November 1, 1922, acting for and upon behalf of the United States of America, as represented by the United States Shipping Board, and not upon its own behalf or in connection with any business from which defendant corporation could or would derive any pecuniary gain and benefit, execute a certain contract and agency agreement with Admiral Oriental Line, a corporation, whereby provision was made for the operation by the said Admiral Oriental Line for the United States Shipping Board of vessels of the United States. * * * That, pursuant to the provisions of said agency contract and amendments thereto with said Admiral Oriental Line, certain ships owned by the United States of America and controlled by the United States Shipping Board have been operated, into and from the port of Seattle and other ports, for the United States, by the said Admiral Oriental Line, under the supervision and oversight of the defendant corporation, acting for the United States of America, pursuant to the power and authority vested in the defendant corporation by law and by the board resolution of September 30, 1921, hereinabove referred to, and the five passenger ships, mentioned in the affidavit of T. B. Owen, filed in this cause, were at the time of service of process in this case and are now, and have been since

November 1, 1922, some of the ships so operated by the Admiral Oriental Line for the United States of America."

It further appears that defendant was, at the time of service of process, occupying the land constituting the Skinner & Eddy shipbuilding plant No. 2, at Seattle, and that from the concentration yard upon such property it sold, and offered for sale, materials stored in said yard. Defendant has here contracted in its own name, for the repair and equipment of ships in this district. The nature of the defendant's activities are concisely stated in the resolution of the Shipping Board of September 30, 1921. The pertinent parts of this resolution are as follows:

"Resolved, that the power and authority vested in the Shipping Board by the Merchant Marine Act 1920 shall, until otherwise ordered by the board, be exercised by it through the United States Shipping Board Emergency Fleet Corporation in the following matters, and to the extent and in the manner hereinafter provided:

"(1) The operation, maintenance, repair, and reconditioning of vessels provided that no established line shall be discontinued, or new line established, or allocation of passenger vessels made, without the approval of the United States Shipping Board.

"(2) The completion or conclusion of any construction work upon vessels which has heretofore been begun or has been authorized by the United States Shipping Board.

"(3) The sale of vessels (except to aliens) at such prices and on such terms and conditions as the United States Shipping Board may prescribe.

"(4) The operation and sale of housing projects, real estate, railroad, and other similar property, subject to confirmation by the United States Shipping Board before any final contract of sale is made.

"(5) The operation and sale of dry docks; all sales to be subject to such terms and prices as may be established by the United States Shipping Board.

"(6) The custody and sale of all other property and materials.

"(7) All accounting for the United States Shipping Board Emergency Fleet Corporation.

"(8) Insurance and matters pertaining to the same.

"(9) The operation of all piers and pier facilities: Provided that no pier or pier facilities shall be leased without prior authorization from the United States Shipping Board.

"(10) The leasing and rental of offices, warehouses, docks, and storage facilities.

"(11) All matters incidental to any of the foregoing, including the execution of contracts, charters, bills of sale, leases, deeds, and other instruments necessary or convenient to the exercise of the power and authority hereby conferred upon the United States Shipping Board Emergency Fleet Corporation; and be it further, * * *" etc.

Without going further into details of the various business transactions covered by the affidavits, it is clearly shown that the defendant is doing in this district a very substantial part of such business or transactions as it is authorized to do, or in fact anywhere does.

[2] While the exact point in controversy does not appear to have been decided, it is clearly implied from the decision of the Supreme Court of the United States, in Sloan Shipyards Corporation et al. v. United States Shipping Board Emergency Fleet Corporation and the United States, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762, that defendant is suable in this district. Other cases tending to support this conclusion are Bank of United States v. Planters' Bank, 9 Wheat. 904,

6 L. Ed. 244; United States v. Strang et al., 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368; The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962; United States v. Matthews et ux. (9 C. C. A.) 282 Fed. 266; King County, Wash. v. United States Shipping Board Emergency Fleet Corporation (9 C. C. A.) 282 Fed. 950; United States Shipping Board Emergency Fleet Corporation v. Banque Russo Asiatique, London (C. C. A.) 286 Fed. 918; Lord & Burnham Co. v. United States Shipping Board Emergency Fleet Corporation (D. C.) 265 Fed. 955; Gould Coupler Co. v. United States Shipping Board Emergency Fleet Corporation (D. C.) 261 Fed. 716; Buffalo Union Furnace Co. v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 291 Fed. 23. In United States v. Walter, 44 Sup. Ct. 10, 68 L. Ed. ── (October term 1923, No. 20), the Supreme Court says:

"The United States can protect its property by criminal laws, and its constitutional power would not be affected if it saw fit to create a corporation of its own for purposes of the Government, under laws emanating directly or indirectly from itself, and turned the property over to its creature. The creator would not be subordinated to its own machinery."

No intention is shown by the foregoing language to narrow in any way the scope of the holding in Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation. In the instant case, as in the Sloan Shipyards Case, the court is determining, not the question of the government's power, but of its intent, as shown by congressional enactments. Congress doubtless could provide that suits, such as the present, could only be brought in the Court of Claims. The Director General of Railroads, with powers not dissimilar in principle to those of the Shipping Board, made orders as to the venue of suits against himself, and such orders were upheld by the courts in a number of decisions meeting the approval of the Supreme Court. Missouri Pacific Railroad Co. et al. v. Ault, 256 U. S. 554, at 561, Note 1, 41 Sup. Ct. 593, 65 L. Ed. 1087.

The fact that the plaintiff Skinner & Eddy Corporation may have a suit pending in the Court of Claims to recover upon the same cause of action is of no consequence upon this motion. If the two suits cannot be maintained at the same time, defendant's remedy is a motion to compel the plaintiff to elect in which court it will proceed.

Motions to quash, dismiss, and to amend appearance denied.