INGERSOLL-RAND COMPANY, Respondent, v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION, Appellant.

First Department, March 11, 1921.

**Evidence — judicial notice — jurisdiction of Supreme Court over action against corporation in which United States government owns more than half of stock.**

The Appellate Division can take judicial notice of the acts of Congress and of the executive orders of the President of the United States made pursuant thereto, and of historical facts of general interest.

When Congress provided for the incorporation of the defendant, under the laws of the District of Columbia and authorized the Shipping Board

for and on behalf of the United States to subscribe for not less than one-half of the capital stock thereof, it authorized the creation of an artificial person capable of suing and being sued, as any other corporation of the District of Columbia, and in subscribing and holding stock in that corporation the United States laid aside its sovereign character and took that of a private citizen, a stockholder in the corporation, exercising its power as every other stockholder, by its vote in stockholders' meetings.

Such corporation, and not the government, became liable for its debts, and satisfaction for such debts is to be obtained out of its property and not as a claim against the United States.

Therefore, where its agent, a New York corporation, purchased merchandise in the city of New York, from a corporation authorized to do business in this State, the courts of this State have jurisdiction over the cause of action, and by service of process acquired jurisdiction of the defendant.

APPEAL by the defendant, United States Shipping Board Emergency Fleet Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of October, 1920, sustaining the demurrer of the plaintiff to the affirmative defense alleged in the answer.

*William Y. C. Anderson* of counsel [*John E. Walker* and *E. E. Jacobsen* with him on the brief; *Francis G. Caffey, United States attorney*], for the appellant.

*Albert M. Lee* of counsel [*Harry N. Wessel,* attorney], for the respondent.

PAGE, J.:

This action is to recover the sum of $1,477.85 from the defendant, a corporation organized and existing under the laws of the District of Columbia, as the undisclosed principal of the Fougner Concrete Ship Building Co., Inc., a domestic corporation, to which the plaintiff, a New Jersey corporation, sold and delivered pneumatic tools of the agreed price and value of $2,463.35, upon account of which $985.50 has been paid.

The separate defense in the answer which is challenged is as follows:

" 3. The defendant is a corporation organized April 16, 1917, pursuant to sub-chapter 4 of the incorporation laws of the District of Columbia and in pursuance of Section 11 of

the Act of Congress entitled 'An Act to establish a United States Shipping Board' approved September 7, 1916; that its corporate object is and at all times has been as set forth in said section of said Shipping Act of 1916, to wit, the purchase, construction, equipment, lease, charter, maintenance and operation of merchant vessels in the commerce of the United States; that in pursuance of said Shipping Act of 1916 and the several acts of Congress beginning with the Urgent Deficiencies Appropriation Act of June 15, 1917, and ending with the Sundry Civil Act of July 19, 1919,* the said United States Shipping Board Emergency Fleet Corporation has been and at all the times mentioned in the complaint was the delegate or deputy of the President of the United States in the exercise of the power and authority vested in him for the construction of vessels, the purchase or requisition of vessels in process of construction or of contracts for the construction of such vessels and the completion thereof and for the production, purchase and requisitioning of materials for ship construction, the said acts having empowered and authorized the President to exercise the power and authority vested by them in him through such agency or agencies as he should determine from time to time; and that under and in accordance with the provisions of an executive order dated July 11, 1917, the defendant was designated as agent of the President to have and to exercise all the power and authority vested in the President under the said acts referred to herein. That this action is in substance and effect an action against the United States of America and as such was not maintainable as against this defendant.''

The question raised by the demurrer is whether this is an action against the United States. If it is, this court has no jurisdiction of the action. The allegation to that effect in the defense is not admitted by the demurrer, that being a conclusion drawn by the defendant from the facts set forth in the answer. In considering this case we can take judicial notice of the acts of Congress and of the executive orders of the President of the United States made pursuant thereto, and of historical facts of general interest.

---

* See 41 U. S. Stat. at Large, 180, chap. 24.— [REP.

The act of Congress passed and approved by the President September 7, 1916 (39 U. S. Stat. at Large, 728, chap. 451), authorized the appointment of the United States Shipping Board, for the purpose of encouraging, developing and creating a naval auxiliary and naval reserve and a merchant marine to meet the requirements of the commerce of the United States with its territories and possessions, and for other purposes.   Section 11 of this act provides: " That the board, if in its judgment such action is necessary to carry out the purposes of this Act, may form under the laws of the District of Columbia one or more corporations for the purchase, construction, equipment, lease, charter, maintenance, and operation of merchant vessels in the commerce of the United States. The total capital stock thereof shall not exceed $50,000,000. The board may, for and on behalf of the United States, subscribe to, purchase, and vote not less than a majority of the capital stock of any such corporation, and do all other things in regard thereto necessary to protect the interests of the United States and to carry out the purposes of this Act.   The board, with the approval of the President, may sell any or all of the stock of the United States in such corporation, but at no time shall it be a minority stockholder therein   *   *   *   ." (39 U. S. Stat. at Large, 731, § 11.)

In accordance with its provisions, the United States Shipping Board was duly constituted and on April 16, 1917, ten days after the declaration of a state of war between the United States and Germany,* the defendant was incorporated under sub-chapter 4 of the Incorporation Laws of the District of Columbia,† and in accordance with section 11 of the act of September 7, 1916, set forth in its charter, its objects to be " the purchase, construction, equipment, lease, maintenance, and operation of vessels in the commerce of the United States, and in general to do and perform every lawful act and thing necessary or expedient to be done or performed for the efficient and profitable conducting of said business as authorized by the laws of Congress, and to have and to exercise all the powers conferred by the laws of the District of Columbia upon cor-

* See 40 U. S. Stat. at Large, 1, chap. 1; Id. 1650.— [REP.

† See 31 U. S. Stat. at Large, 1284, § 605 *et seq.* as amd.— [REP.

porations under said sub-chapter 4 of the Incorporation Laws of the District of Columbia."

Our attention has been called by the learned counsel for the defendant to certain other acts of Congress thereafter passed making appropriations of money (Urgent Deficiencies Act, 40 U. S. Stat. at Large, 182, chap. 29) and extending the President's power to take over certain transportation systems (40 U. S. Stat. at Large, 535, chap. 62), and to the President's executive orders of July 11, 1917, June 18, 1918, and December 3, 1918 (Official U. S. Bulletin, July 13, 1917, vol. 1, No. 54, p. 1; Id. June 20, 1918, vol. 2, No. 340, p. 10; Id. Dec. 5, 1918, vol. 2, No. 480, p. 3), delegating such power as was given to him to the Shipping Board or to this defendant. These subsequent statutes and orders have no particular bearing on the case under consideration, as they in no way change the character or purpose of the original act or the charter powers of the defendant. The transaction for which it is sought in this action to hold it responsible was well within its original charter powers.

When Congress provided for the incorporation of the defendant under the laws of the District of Columbia and authorized the Shipping Board for and on behalf of the United States to subscribe for not less than one-half of the capital stock thereof, it authorized the creation of an artificial person capable of suing and being sued, as any other corporation of the District of Columbia. The United States laid aside its sovereign character and took that of a private citizen, a stockholder in the corporation, exercising its power, as every other stockholder, by its vote in stockholders' meetings. This has been the settled law in this country since Chief Justice MAR-SHALL's opinion in *United States Bank* v. *Planters' Bank* (9 Wheat. 904, 907), in which he said: " The State does not, by becoming a corporator, identify itself with the corporation. The Planters' Bank of Georgia is not the State of Georgia, although the State holds an interest in it. It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character,. and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends

to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted.  *  *  *  The State of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character so far as respects the transactions of the bank and waives all the privileges of that character.  As a member of a corporation, a government never exercises its sovereignty.  It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act.  The government of the Union held shares in the old Bank of the United States; but the privileges of the government were not imparted by that circumstance to the bank.  The United States was not a party to suits brought by or against the bank in the sense of the Constitution." (See, also, *Bank of Kentucky* v. *Wister*, 2 Pet. 318, 323; *Briscoe* v. *Bank of Commonwealth of Kentucky*, 11 id. 257; *Darrington* v. *Bank of Alabama*, 13 How. [U. S.] 12; *Curran* v. *State of Arkansas*, 15 id. 304; *Barings* v. *Dabney*, 19 Wall. 1; *Salas* v. *United States*, 234 Fed. Rep. 842; *Panama R. R. Co.* v. *Curran*, 256 id. 768.)

The business in which this defendant corporation was to be engaged was such as had theretofore been conducted by private persons and corporations.  The building, purchasing, leasing and operating of ships from time out of mind had been conducted by private enterprise.  When the government decided to invest capital in such business, it authorized the incorporation of a business corporation and became a stockholder therein.  Such corporation, and not the government, became liable for its debts, and satisfaction for such debts is to be obtained out of its property and not as a claim against the United States.  Therefore, where its agent, a New York corporation, purchased merchandise in the city of New York from a corporation authorized to do business in and, therefore, a resident of this State, the courts of this State have jurisdiction over the cause of action, and by service of process the Supreme Court has acquired jurisdiction of the defendant.

The question of the character of the defendant has been before the United States District Courts in several cases, with somewhat varying results.  (Compare *Gould Coupler Co.* v. *U. S.*

*Shipping Board, E. F. C.,* 261 Fed. Rep. 716; *Commonwealth Finance Corp.* v. *Landis (E. F. C.),* Id. 440; *Lord & Burnham Co.* v. *U. S. Shipping Board, E. F. C.,* 265 id. 955; *Perna* v. *U. S. Shipping Board, E. F. C.,* 266 id. 896; *Banque Russo-Asiatque-London* v. *U. S. Shipping Board, E. F. C.,* Id. 897; *Ingram Day Lumber Co.* v. *U. S. S. B. E. F. C.,* 267 id. 283, with *Southern Bridge Co.* v. *U. S. S. B. E. F. C.,* 266 id. 747; *Sloane Ship Yards Corp.* v. *U. S. S. B. E. F. C.,* 268 id. 624.) It is not necessary to consider these cases, for in my opinion the Supreme Court of the United States has settled the question by applying the principle stated in *United States Bank* v. *Planters' Bank (supra)* to this corporation in a case decided about the time the instant case was argued but in which the opinion was not available until after this case was decided at consultation. (*United States* v. *Strang,* 254 U. S. 491, decided Jan. 3, 1921.) Strang was indicted, charged with having unlawfully acted as an agent of the United States in transacting business for the Shipping Board Emergency Fleet Corporation with a partnership of which he was a member. A demurrer to the indictment was sustained. On writ of error, this judgment was affirmed, the court saying: " The corporation was controlled and managed by its own officers and appointed its own servants and agents, who became directly responsible to it. Notwithstanding all its stock was owned by the United States it must be regarded as a separate entity. * * * Generally agents of a corporation are not agents of the stockholders and cannot contract for the latter. Apparently this was one reason why Congress authorized organization of the Fleet Corporation." (Citing *United States Bank* v. *Planters' Bank, supra,* and other cases.)

The order sustaining the demurrer is affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.