Thomas De Simone, Respondent, *v.* Transportes Maritimos Do Estado, Appellant.

First Department, March 3, 1922.

Courts — jurisdiction — objection to jurisdiction on ground that defendant is foreign government may be raised by answer without waiving objection — general appearance does not waive objection to jurisdiction where no jurisdiction could be obtained by serving summons in this State — distinction between sovereignty of foreign nation and quasi sovereignty of State of United States — foreign government cannot be sued in our courts without its consent.

A defendant in an action in a court of this State by serving an answer denying certain material allegations of the complaint and pleading certain separate defenses, among which was an objection to the jurisdiction of the court on the ground that the defendant was a department of the government of Portugal, an independent sovereign nation in amity with the United States government, did not thereby waive the objection to the jurisdiction, as a voluntary general appearance of a defendant is only equivalent to the personal service of a summons within the State and, hence, waives jurisdiction only in those cases in which jurisdiction could be acquired by such service; and it would have been impossible to obtain jurisdiction of the government of Portugal by service of a summons within this State.

The right of a court of this country to assume jurisdiction over a cause of action against a foreign sovereign nation cannot be reasoned from analogy to the right to so treat one of our States, as there is a distinction between the sovereignty of the former and the *quasi* sovereignty of the latter. A state of the Union is not an independent sovereignty, either in relation to foreign nations or to the other States of the United States. The Federal government is the sole sovereignty recognized by other governments. A State has no position in international matters except as represented by the Federal government.

A foreign government cannot be sued in the courts of this State without its consent.

Motion for reargument of an appeal by the defendant, Transportes Maritimos Do Estado, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on or about the 31st day of May, 1921, sustaining plaintiff's demurrer to each of the separate defenses contained in defendant's answer.

*Meyer Kraushaar* of counsel [*Celler & Kraushaar,* attorneys], for the motion.

*F. Dudley Kohler,* opposed.

PAGE, J.:

The inspiring cause of this motion is the fact that the United States Circuit Court of Appeals for the Second Circuit in a suit in admiralty, wherein the vessels libelled were in the possession and control of the above-named defendant, had dismissed the appeal and stated that " The sovereign immunity can be waived and has been waived in this case." Thereafter our decision (199 App. Div. 602) was called to the attention of that court, with the suggestion that our decision was not in harmony with theirs, whereupon the Circuit Court handed down an opinion (*Tietjen & Lang Dry Dock Co. v. S. S. Sao Vicente,* Jan. 25, 1922, —— Fed. Rep. ——) more fully stating their views, and this opinion is, among other things, suggested as grounds for a reargument of this appeal. Our great respect for the learning and ability of the United States Circuit Court of Appeals for the circuit of which this State is a part has caused us to give careful consideration to their opinion, especially to the reasons assigned in the final statement denominated " 3." The remaining part of the opinion dealing with the facts as related to admiralty procedure have no bearing upon a decision in an action at law in a court of the State of New York.

In our former opinion we held that the defendant by serving an answer denying certain material allegations of the complaint and pleading certain separate defenses, among which was a plea to the jurisdiction on the ground that the defendant was a department of the government of Portugal, an independent sovereign nation in amity with the United States government, did not thereby waive the objection to the jurisdiction. The substance of the defense was thus stated in our opinion: " The defendant objects to and protests against the assumption of jurisdiction by this court, and alleges that it is a department of the sovereign foreign government of Portugal and cannot be sued in any of the courts of the United States without its consent, and that this action is in substance and effect an action against the Government of Portugal, and as such is not maintainable against the defendant." To this defense a demurrer was interposed for insufficiency. We treated this answer as the equivalent of a voluntary general appearance and stated: " A voluntary general appearance of the defendant is equivalent to the personal service of the summons within the State (Code Civ. Proc. § 424), and, therefore, waives the objection to jurisdiction of the court in such cases as those in which

the court could acquire jurisdiction of the person if such service was made within the State." We pointed out that it was impossible to obtain jurisdiction by the service of a summons upon any officer or representative of the government of Portugal who might have been within this State.

The Circuit Court of Appeals on the contrary said: " 3. Finally, if we were to pass by the questions already considered, appellant is confronted with a line of cases of ruling authority which have now clearly held that the immunity of the sovereign being susceptible of waiver is lost when the sovereign enters a litigation with a general appearance."

The cases relied on by the court as establishing this principle are *Clark* v. *Barnard* (108 U. S. 436, 447); *Gunter* v. *Atlantic Coast Line* (200 id. 284, 289); *Porto Rico* v. *Ramos* (232 id. 627); *Richardson* v. *Fajardo Sugar Co.* (241 id. 44); *Veitia* v. *Fortuna Estates* (240 Fed. Rep. 256, 262). In every one of these cases the question arose as to the effect of a voluntary appearance in an action in the United States courts of either one of the States of the United States or of Porto Rico, a territory of the United States. (See *Kopel* v. *Bingham,* 211 U. S. 468, 476.)

A State of the Union is not an independent sovereignty, either in relation to foreign nations or to the other States of the United States. The Federal government is the sole sovereignty recognized by other governments. A State has no position in international matters except as represented by the Federal government. As between themselves the States are separate entities, but they have no power to make treaties or compacts with each other, except as authorized by the Congress of the United States. (U. S. Const. art. 1, § 10.) Claims cannot be enforced or wrongs redressed by levying war, but an action may be maintained against the offending State in the Supreme Court of the United States. (*New Hampshire* v. *Louisiana,* 108 U. S. 76, 90.) A State has been designated by Mr. Justice Holmes as a " quasi sovereign " and by Mr. Justice Harlan as " possessing some powers of sovereignty." (*Georgia* v. *Tennessee Copper Co.,* 206 U. S. 230, 237, 239, 240.)

Within its territorial limits a State may make and enforce laws; set up courts and define their jurisdiction; maintain a militia; exercise the police powers and rights of eminent domain; levy and collect taxes; create municipal and private corporations; and exercise generally sovereign powers. Its sovereignty ends with its State boundary lines. Its relations with other States of the Union are not governed or controlled by international law or comity, but by a private international law, usually denominated a conflict of laws, regulated and controlled by the Constitution and laws of

the United States. This distinction is evident when we consider that a citizen of a State cannot sue that State in any court without its consent, because as to the citizen the State is a sovereign, but until the adoption of the Eleventh Amendment to the Constitution of the United States a citizen of another State could sue a State in the United States courts (*Chisholm* v. *Georgia,* 2 Dall. 419, 471, 472), and as demonstrated by Chief Justice JAY, there was nothing derogatory to the dignity of a State in subjecting it to suit in a court of the United States.

It has been the practice of States either to erect special courts in which one of its citizens could prosecute claims against the State, or to confer jurisdiction on courts to hear and adjudicate such claims. Therefore, its consent to waive the constitutional immunity from suit could be implied from its act by appearance as well as by express legislative provision.

In my opinion the right of a court of this country to assume jurisdiction over a cause of action against a foreign sovereign nation, or to seize and impound its property cannot be reasoned from analogy to the right to so treat another State. In *New Hampshire* v. *Louisiana* (*supra*) it was distinctly held that one State cannot create a controversy with another State by assuming the prosecution of debts owing by the other State to its citizens. In *United States* v. *Diekelman* (92 U. S. 520, 524) the court said: " One nation treats with the citizens of another only through their government. A sovereign cannot be sued in his own courts without his consent. His own dignity, as well as the dignity of the nation he represents, prevents his appearance to answer a suit against him in the courts of another sovereignty, except in performance of his obligations, by treaty or otherwise, voluntarily assumed. Hence, a citizen of one nation wronged by the conduct of another nation, must seek redress through his own government. His sovereign must assume the responsibility of presenting his claim, or it need not be considered. If this responsibility is assumed, the claim may be prosecuted as one nation proceeds against another, not by suit in the courts, as of right, but by diplomacy, or, if need be, by war. It rests with the sovereign against whom the demand is made to determine for himself what he will do in respect to it. He may pay or reject it; he may submit to arbitration, open his own courts to suit, or consent to be tried in the courts of another nation. All depends upon himself." Alexander Hamilton wrote: " It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense, and the general practice of mankind." (The Federalist, No. LXXXI.) The leading case in this country on the immunity of a vessel of a foreign

sovereignty from seizure by the courts of the United States in a suit in admiralty is *The Exchange* (7 Cranch, 116) in which the schooner *Exchange*, owned by American citizens, was seized on the high seas by a French privateer, taken to France and refitted as a vessel of war. Two years after she entered an American port, and upon libel filed in the United States District Court by her former owners was seized by process of the court. The libel was dismissed by the District Court, the sentence of the District Court reversed by the Circuit Court and on appeal the sentence of the Circuit Court reversed and that of the District Court affirmed by the Supreme Court of the United States. Chief Justice Marshall, writing for the court, held that a public armed vessel of a foreign nation entering the port of a friendly State under the circumstances of that case is not subject to the judicial tribunals of the United States. The same principle was applied in 1880 by the Court of Appeal, which is one of the two permanent divisions of the Supreme Court of Judicature of England, in the case of *The Parlement Belge* (L. R. 5 Prob. Div. 197) in proceedings *in rem* to secure redress for loss incurred by a collision instituted against an unarmed mail packet boat belonging to the government of Belgium, officered and commissioned by that government and sailing between Dover and Ostend. The court held that the vessel came within the rule which extends immunity from the jurisdiction of the courts of one country to the public vessels of a foreign nation, even though incidentally carrying freight and passengers for hire. The court cited and quoted from the following cases: *The Exchange (supra)*; *Duke of Brunswick* v. *King of Hanover* (6 Beav. 1, 50); *The Prins Frederik* (2 Dod. 451, 456); *DeHaber* v. *The Queen of Portugal* (17 Q. B. 171); *The Athol* (1 Wm. Rob. 374); *Briggs* v. *The Light Boats* (11 Allen [Mass.], 157); *The Marquis of Huntly* (3 Hagg. 246); *The Thomas A. Scott* (10 L. J. [N. S.] 726) and *Vavasseur* v. *Krupp* (L. R. 9 Ch. Div. 351). The court then said (p. 214): " The principle to be deduced from all these cases is that, as a consequence of the absolute independence of every sovereign authority, and of the international comity which induces every sovereign State to respect the independence and dignity of every other sovereign State, each and every one declines to exercise by means of its courts any of its territorial jurisdiction over the person of any sovereign or ambassador of any other State, or over the public property of any State which is destined to public use, or over the property of any ambassador, though such sovereign, ambassador, or property be within its territory, and, therefore, but for the common agreement, subject to its jurisdiction." The court then considered the argument that the admiralty suit was a proceeding *in rem* solely against the property,

and not a procedure directly or indirectly impleading the owner of the property, and held that a court which seizes and sells a man's property assumes to make that man subject to its jurisdiction, and said (p. 219): "To implead an independent sovereign in such a way is to call upon him to sacrifice either his property or his independence. To place him in that position is a breach of the principle upon which his immunity from jurisdiction rests. We think that he cannot be so indirectly impleaded, any more than he could be directly impleaded. The case is, upon this consideration of it, brought within the general rule that a sovereign authority cannot be personally impleaded in any court." These decisions so far as I have been able to discover have never been questioned.

Is this immunity from suit lost by appearing generally and protesting or setting up the plea of immunity by answer? As we stated in our former opinion, a voluntary general appearance of the defendant is equivalent to the personal service of the summons within the State (Code Civ. Proc. § 424) and, therefore, waives the objection to the jurisdiction of the court in cases in which the court would acquire jurisdiction of the person if such service was made within the State. It follows from this that where the person served is immune from suit in our courts so that by personal service of the summons no jurisdiction could be obtained, his service of an answer in which he protests against the assumption of jurisdiction, and pleads the want of jurisdiction as a defense, does not thereby waive the defense. For the plea goes not alone to jurisdiction of the person but to the subject-matter of the action as well, although the action is to recover for goods sold and delivered, of which the court would have jurisdiction ordinarily. It is more than this, it is to recover for goods sold and delivered to a foreign sovereignty of which the court does not, and cannot have jurisdiction except with its consent. In the case of *The Parlement Belge* (*supra*, p. 220) the court said: "It has been frequently stated that an independent sovereign cannot be personally sued, although he carried on a private trading adventure. It has been held that an ambassador cannot be personally sued, although he has traded, and in both cases because such suit would be inconsistent with the independence and equality of the state which he represents." In one sense the defendant by pleading has submitted the question as an issue of fact to the court, and that is whether the defendant above named is a department of the government of Portugal. We did not discuss this in our former opinion for there we were dealing with the demurrer to the defense which we overruled, thereby holding that the facts alleged, taken as true, would constitute a defense. We did not direct a dismissal of the com-

plaint but left the issue of fact to be tried. The plaintiff claims that he is thus put at a disadvantage, as he will have to fully develop his case before the defendant is required to put in its defense. This result does not follow. The court at Special Term would, undoubtedly, grant an order directing the issue of jurisdiction to be separately tried, as that issue if resolved in favor of the defendant would lead to a dismissal of the action, and if decided that the defendant was not a department of the government but a corporation similar to that considered by us in *Ingersoll-Rand Co. v. U. S. Shipping Board E. F. C.* (195 App. Div. 838) then the action would be tried on its merits.

In *Ex parte Muir* (254 U. S. 522, 532) the court indicated the different methods in which a foreign sovereignty could raise the question of jurisdiction. We stated in our former opinion the methods therein set forth, among which was by appearing in the action, or presenting its claim through the State Department of the United States government and, if it sanctioned the claim of immunity, presenting it to the court through the Attorney-General. In *The Pesaro* (255 U. S. 216), instead of following the methods prescribed in *Ex parte Muir,* the Italian Ambassador suggested to the court that the ship was owned by the Italian government and at the time of the arrest was in its possession. The libellant objected that a direct suggestion by the Ambassador was not admissible and that, to be entertained, the suggestion should come through the official channels of the United States. This objection was overruled and the ship released from arrest. The Supreme Court of the United States in reversing the decree said (p. 219): " The terms and form of the suggestion show that the Ambassador did not intend thereby to put himself or the Italian government in the attitude of a suitor, but only to present a respectful suggestion and invite the court to give effect to it. He called it a ' suggestion ' and we think it was nothing more. In these circumstances the libelants' objection that, to be entertained, the suggestion should come through official channels of the United States was well taken. *Ex parte Muir,* 254 U. S. 522;" and further stated that an opportunity must be given so to present and establish the matters affirmed in the suggestion in an appropriate way when the case goes back to the District Court.

In the instant case the above-named defendant by its attorney answered, setting up the defense that it was a department of the government of Portugal. Can it be said that the defendant had consented to the jurisdiction of the court when the answer presented a protest and a defense to the jurisdiction? As the court said in *United States v. Diekelman (supra)*: " It rests with the

sovereign against whom the demand is made to determine for himself what he will do in respect to it." In the instant case a defense to the jurisdiction of the court and a protest against its exercise was submitted to the court.

If that should prove to be the fact the court has no jurisdiction and could not disregard the protest and overrule the objection by a claim that by the municipal law of this State the defense was waived, for by the law of nations an adjudication binding the sovereign to pay the judgment could not be made nor its property taken on execution to satisfy the judgment. To hold otherwise would allow the courts of this State to endanger the peaceful relations between the United States and a friendly sovereignty and furnish the latter with a *casus belli*.

In our former opinion we cited the case of *Sweet* v. *Tuttle* (14 N. Y. 465) merely for the purpose of showing the distinction between pleas in common-law pleading and answers and defenses under the Code pleading; that under the former pleas in abatement and in bar could not be joined, while under the latter a defendant answers but once and he may set forth as many defenses as he thinks he has, and, therefore, a union of defenses in an answer did not necessarily cause the abandonment of any of them. As an illustration and in harmony with this principle we cited *Hamburger* v. *Baker* (35 Hun, 455, 457). That case was not overruled in *Reed* v. *Chilson* (16 N. Y. Supp. 744; affd., 142 N. Y. 152), in which the non-resident defendant, whose property had not been attached, appeared by attorney who served a general notice of appearance, and some three months afterwards answers were served setting up several defenses and among them the lack of jurisdiction. In the *Hamburger* case and in the case at bar there was no notice of appearance served, but the appearance was effected by the service of an answer. A notice of appearance may be limited for the purpose of raising the question of the jurisdiction of the court and where the appearance is by demurrer or answer which raises the question of jurisdiction of the court the defendant cannot be held to waive the objection or defense expressly stated in the pleading. Section 488 of the Code of Civil Procedure expressly provides that " The defendant may demur to the complaint, where one or more of the following objections thereto appear upon the face thereof: 1. That the court has not jurisdiction of the person of the defendant. 2. That the court has not jurisdiction of the subject of the action," and section 498 of the Code provides that where any of the matters enumerated in section 488 as grounds for demurrer do not appear on the face of the complaint the objection may be taken by answer. If not taken either

by demurrer or answer the defendant is deemed to have waived it except the objection to the jurisdiction of the court or the objection that the complaint does not state facts sufficient to constitute a cause of action. (Code Civ. Proc. § 499.) If the objection in the first instance is presented in the manner prescribed by the Code, how can the defendant be deemed to have waived it? The answer would seem to be that it has not. (*Popfinger* v. *Yutte*, 102 N. Y. 38, 42; *Hankinson* v. *Page*, 19 Abb. N. C. 274, 276; WALLACE, J., U. S. Dist. Ct. So. Dist. N. Y.; *Weidman* v. *Sibley*, 16 App. Div. 616, 622.)

In the instant case if the facts stated in the defense are proved then no court in the State of New York has acquired or can acquire jurisdiction of the person or the subject-matter of the action over the protest of the defendant. We, therefore, adhere to our original decision, and the order will be modified as directed in our former opinion.

As the order does not finally determine the action, leave to appeal to the Court of Appeals is denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Motion denied, with ten dollars costs.