CLAUDE M. NANKIVEL and JOHN MACGREGOR GRANT, INC., Respondents, *v.* OMSK ALL RUSSIAN GOVERNMENT, Defendant.
FRANK G. WEBSTER and Others, Copartners Doing Business under the Firm Name of KIDDER, PEABODY & COMPANY, Appellants.

First Department, December 22, 1922.

Judgments — judgment was recovered against unrecognized foreign government on alleged personal service — collateral attack in supplementary proceedings to examine third person — judgment of court can be successfully attacked collaterally only where jurisdictional defect appears in record — personal service of summons was duly adjudicated — third person sought to be examined cannot raise objection that defendant could not raise — service may be made on diplomatic representative — unrecognized foreign government is suable in our courts — judicial notice will not be taken that defendant has ceased to exist — present non-existence of defendant was not shown — burden on third person to show non-existence of defendant.

Strangers to the original litigation who are collaterally attacking the validity of the judgment when it is incidentally brought into question can do so only on the ground of lack of jurisdiction, and the jurisdictional defect must appear upon the record of the action that resulted in the judgment.   Any jurisdictional fact that does not appear upon the face of the record must be litigated in the original action or in a direct attack upon the judgment.   If it appears upon the face of the record that a jurisdictional fact was necessarily determined in the original action, it cannot be shown, on a collateral attack, that the facts are to the contrary.

In supplementary proceedings to examine third persons alleged to be indebted to the judgment debtor, an unrecognized foreign government, personal service of the summons in the original action was duly adjudicated therein, where it appears that the affidavit of service is a part of the judgment roll.

In the supplementary proceedings the third persons by attempting to defeat the execution of the judgment on the ground that it was void, and to prevent the application of money in their hands to the payment of the judgment, are acting in the interest and for the protection of the property of the defendant

and not of their own property and they cannot raise objections that the defendant could not make.

In an action against an unrecognized foreign government, service of the summons may properly be made on a diplomatic representative acting as agent of that government residing in this country; the immunity of a diplomatic representative is personal.

An unrecognized foreign government may be sued in the courts of this State by a citizen of this State.

The Appellate Division will not take judicial notice that the defendant in the original action had ceased to exist, and the fact of its present non-existence was not proven by clear and convincing proof by the third persons who were sought to be examined.

The contention of said third persons that the order in supplementary proceedings cannot be allowed to stand because a fact essential to its existence is undetermined, cannot be sustained, in view of the fact that the judgment is regular on its face, and that every presumption is in favor of its validity, and it is not sufficient for one who attacks it to raise a doubt as to a jurisdictional fact, but he must prove that the jurisdiction did not exist.

APPEAL by Frank G. Webster and others, copartners, etc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of August, 1922, denying their motion to vacate an order requiring them to be examined herein in proceedings supplementary to execution as third parties, and to set aside the service of a subpœna *duces tecum.*

*Alexander & Green [Frederic R. Coudert* of counsel; *Mahlon B. Doing* with him on the brief], for third parties, appellants.

*William E. Sims,* for the respondents.

PAGE, J.:

On April 12, 1922, an action was commenced by Claude M. Nankivel, an American citizen and a resident of the State of New York, and John MacGregor Grant, Inc., a New York corporation, as plaintiffs, against Omsk All Russian Government, defendant. The defendant did not appear and on May 9, 1922, judgment for $96,392.38 was entered by default upon the affidavit of service of the summons and complaint personally on the Omsk All Russian Government by delivering a copy thereof to Serge Ughet personally and leaving the same with him, and that the server of the process knew Serge Ughet to be at that time the managing agent of the Omsk All Russian Government in the State of New York, and knew the corporation so served to be the corporation mentioned and described in the summons as the defendant in this action. On May 10, 1922, execution was issued to the sheriff of the county of New York. On May 23, 1922, the plaintiff obtained an order for the examination of the members of the firm of Kidder, Peabody

& Company in supplementary proceedings in aid of the execution upon an affidavit setting forth the above facts, and that the members of said firm were indebted to the defendant in a sum exceeding ten dollars; that the execution had not been returned by the sheriff, and the judgment remained wholly unsatisfied. A subpœna *duces tecum* was served on the members of said firm, requiring them to produce certain books and papers on such examination.

The third parties thus sought to be examined moved to vacate the order and the subpœna. From the order denying the motion this appeal is taken.

Upon the argument of the appeal the following points were presented by the appellants:

I. The judgment was void for the reason that an unrecognized government, so called, is not suable under our law.

II. Even if such a so-called government could have been sued at any time in our courts, this judgment is void and a nullity. (a) The service of process upon Serge Ughet, who at the time was financial attaché to the Russian Embassy, was nugatory and without legal effect under both the Revised Statutes of the United States, and the law of nations, and, therefore, jurisdiction could not be acquired by such service. (b) It is within the judicial knowledge of this court, and in addition is proved as a fact upon this motion, that the so-called Omsk All Russian Government was out of existence and totally defunct at the time of the commencement of this action and of the entry of judgment, thus rendering it impossible to serve process upon any one as its alleged agent or to obtain a valid judgment against it.

III. Should the court not decide the fact of the termination of the existence of the so-called Omsk All Russian Government upon this appeal, the order must be reversed, as it cannot be allowed to stand with a fact essential to its existence undetermined.

IV. The judgment being void, third party proceedings cannot be based thereon, and the order should have been set aside.

V. The restraining order contained in the order for the examination, and the subpœna *duces tecum* in so far as they attempt to affect funds in the hands of Serge Ughet, financial attaché of the Russian Embassy, which funds are the public funds of Russia, are void and of no effect.

Upon the argument of the appeal counsel for appellants was asked by the court how a third party in supplementary proceedings could thus attack the judgment in the action. We have not had the aid of briefs of counsel on this aspect of the case, but it is necessary to determine that question before entering upon a consideration of the contentions of counsel.

The motion to vacate the order was not based upon any irregularity or insufficiency in the supplementary proceedings, or defect in the order or the papers upon which it was granted. Strangers to the original litigation who are collaterally attacking the validity of the judgment when it is incidentally brought into question, can do so only on the ground of lack of jurisdiction, and the jurisdictional defect must appear upon the record of the action that resulted in the judgment. Any jurisdictional fact that does not appear upon the face of the record must be litigated in the original action or in a direct attack upon the judgment. The issue as to such facts cannot be litigated in a collateral action or proceeding. If it appears upon the face of the record that a jurisdictional fact was necessarily determined in the original action, it cannot be shown on a collateral attack that the facts are contrary.

In *Sibley* v. *Waffle* (16 N. Y. 180, 188), an action to recover real estate sold under the authority of an order of the Surrogate's Court in proceedings to sell decedent's real estate, it appeared from the record that the service by publication had been defective as to non-resident heirs, and it was held that, although the recitals in the order were that " on reading and filing satisfactory proof, by affidavit, of the due publication of said order " to show cause, as the affidavit of publication, which was a part of the record, failed to show such service, there was a fatal defect in the jurisdiction of the court.

*Sheldon* v. *Wright* (5 N. Y. 497, 513 *et seq.*) was an action in ejectment to recover real estate sold in a similar proceeding. On the trial evidence was admitted to show that as a fact publication had not been made according to the requirements of the statute. The affidavit of publication in the record showed such due publication, and the court held that evidence to the contrary was inadmissible. The court said: " Such publication must, therefore, be made before full jurisdiction is obtained, not because the statute directs it, for the statutory provision is merely directory, but because it is a great and fundamental ' principle in the administration of justice, that no man can be divested of his rights until he has had the opportunity of being heard' [citations]. Publication of this order then is a jurisdictional fact, of the evidence of which the surrogate must necessarily judge. He has judged and decided that the order was published as required by the statute, and his judgment appears on the record of his proceedings. * * * A similar question arose and was decided at the last term of this court in the case of *Dyckman* v. *Mayor, etc., of New York* [5 N. Y. 434]. In that case the jurisdictional fact appeared on the record as in this case, and on the trial in the collateral action proof was offered to show that the jurisdictional fact did not exist. The judge

rejected the proof and this court affirmed the rejection on the ground that the record of the summary proceedings before the vice-chancellor was conclusive. That case was different from this in three particulars; two unimportant, and one important in the application of the principle of law. The two unimportant particulars are these: In *Dyckman* v. *Mayor, etc., of New York*, the evidence offered to controvert the jurisdictional fact was rejected, and in the present case it was received. In that case the mayor, etc., was a party to the summary proceedings, and defendant in the collateral action; in this case the respondent is defendant in the collateral action and not a party to the summary proceedings. * * * The important particular in which the present case differs from the one of *Dyckman* v. *Mayor, etc.,* is, that the latter, Dyckman, appeared in the summary proceeding, and litigated on the merits; while in the former, the appellant did not appear. The question then arises, does his omission to appear place him in a more favorable condition for litigating the jurisdictional fact; or in other words, can a party to a judicial proceeding, by lying by and omitting to appear, acquire a right to open the proceeding at any time and litigate in a collateral action a jurisdictional fact? It will be perceived at once, that if the right depends on appearance or non-appearance, the fact that the party claiming it has been served with personal or statutory notice makes no difference. If there is any difference, it is in favor of him who has been served with personal notice, for such a notice is, in general, more difficult to prove after a considerable lapse of time, than a notice by publication. * * * It cannot be, therefore, that the acknowledgment or denial of the right of a party to a summary or other judicial proceeding, to disregard the record of it, and litigate collaterally a jurisdictional fact, depends on his appearance or non-appearance in such proceeding. It rests on a deeper and broader ground, a principle which lies at the foundation of social order, and which encourages peace and discourages litigation; and that principle is, that when a court or judicial officer, in the exercise of rightful functions, adjudges upon a matter, that judgment is final between the parties and other persons claiming under them, and is conclusive on the facts which it embraces. There are some qualifications of this principle, and the only one which it is necessary to notice on the present occasion is this: that if the court or officer who pronounces the judgment, has not jurisdiction of the subject and parties, his judgment is not conclusive, and the difficult and important point for decision is, whether the judgment of the surrogate is conclusive on the fact of the publication of the order for persons interested to appear. In my opinion it is. When THOMPSON, Ch. J. said in the case of *Borden* v. *Fitch* (15

Johns. R. 141) that ' the want of jurisdiction is a matter that may always be set up against a judgment,' and SPENCER, Ch. J. quoted his language with approbation in *Mills* v. *Martin* (19 Johns. R. 33), and SUTHERLAND, J. repeated it in *Latham* v. *Edgerton* (9 Cow. R. 229), these distinguished judges doubtless intended only to say that the want of jurisdiction might always be set up against a judgment when it appeared on the record or was presented in any other unexceptionable manner." (See, also, *Wright* v. *Nostrand,* 94 N. Y. 31, 45; *Wetmore* v. *Wetmore,* 149 id. 520, 527.) In a *scire facias* proceeding to revive a judgment, the defendant pleaded *nul tiel* record, and alleged that he was never served with process in the original action. A demurrer to the plea was sustained. The Supreme Court of Illinois held that the demurrer was properly sustained. The court said: " The defenses available, and which go to the plaintiff's right, as against the defendant, to have the judgment executed, are, that there is no such record, or that the judgment has been paid or released, or there has been an accord and satisfaction. The defendant, under the plea of *nul tiel* record, may show the judgment to be void for want of jurisdiction, *if that fact appears from an inspection of the record,* but he cannot attack it collaterally by contradicting the record. * * * A plea to a writ of *scire facias* to revive a judgment denying service of process is a collateral attack on the judgment, and the defendant is not entitled to make such an attack by evidence *aliunde* against a record which shows valid service." (*Bank of Eau Claire* v. *Reed,* 232 Ill. 238.)

It must be borne in mind that while the service of the summons and complaint is recited as having been made personally on the defendant, that fact rests not alone on the recital, but the affidavit of service is a part of the judgment roll. Therefore, those cases that hold that such a recital is only *prima facie* evidence of the fact (*Potter* v. *Merchants' Bank,* 28 N. Y. 641, 652) do not apply, for in this case it is not merely a recital but it is an adjudication upon a fact which was sufficiently proved by the record.

Applying these principles to the case under consideration, it appears that Kidder, Peabody & Company are bankers, with whom it is alleged the defendant has deposited money. In resisting the examination, they are attempting to defeat the execution of the judgment, and the application of the moneys on deposit to the payment of the judgment, and, therefore, it is in the interest and for the protection of the property of the defendant and not of their own property, and they cannot raise objections that the defendant could not make.

The fact that the person served with the summons and com-

plaint, as agent of the defendant, happened to be also an attaché of the Russian Embassy is of no importance. No action was brought against him personally. It is only the person of the attaché and his goods and chattels that are immune from arrest and seizure. (U. S. R. S. § 4063.)

The contention is made that the defendant, as an unrecognized government, so called, is not suable under our law. That this contention is not well founded has been recently held by the Appellate Division of the Second Department. (*Wulfsohn* v. *Russian Socialist Federated Soviet Republic*, 202 App. Div. 421.) Immunity from suit depends upon recognition by the United States government of the status of the foreign government as a sovereign State. The argument of the learned counsel for the appellants is that, if the defendant is not recognized as a *de jure* or *de facto* government by the proper authorities, it cannot be sued, and if it should be so recognized, it cannot be sued. Therefore, although there was an entity which, in a portion of the former Russian Empire, made and executed laws, set up courts and maintained armies, made contracts for the purchase of goods in this country, and borrowed money here, and disbursed a portion of the same, at least, in satisfaction of such contracts, yet it cannot as an entity be sued, and if the court recognizes it as a government, it cannot be the defendant in an action. The several States of the Union are governments exercising within their territorial limits some powers of sovereignty, and yet, until the adoption of the Eleventh Amendment to the Constitution of the United States, a citizen of one State could sue another State in the United States courts. (*Chisholm* v. *Georgia*, 2 Dall. 419, 471, 472; *De Simone* v. *Transportes Maritimos Do Estado*, 200 App. Div. 82, 86.) Our courts have held " that a State is a corporation cannot be doubted. It is a legal being, capable of transacting some kinds of business like a natural person, and such a being is a corporation." (*State of Indiana* v. *Woram*, 6 Hill, 33, 38; *Delafield* v. *State of Illinois*, 2 id. 159, 162.) " The Federal government is the sole sovereignty recognized by other governments." (*De Simone* v. *Transportes Maritimos Do Estado, supra.*) We find a somewhat analogous situation in regard to what was the former Empire of Russia. The government of the Czar was overthrown and in its place was set up the " First Provisory Government," or, as popularly known, the " Kerensky Government," which was recognized as the *de jure* government, and Boris Bakhmeteff was received as the duly accredited Ambassador Extraordinary and Plenipotentiary on July 15, 1917, as appears from the certificate of the Secretary of State of the United States, and so far as appears from the record before us,

still is such an Ambassador.   Therefore, that government is recognized as the sovereignty that has succeeded to the former Russian Empire, and that government is the sole entity that is entitled to sovereign rights in relation to that territory.   Notwithstanding this, it has been shown that there are *de facto* entities exercising governmental rights within that territory.   Not having been recognized by this government they have none of the privileges and immunities of foreign sovereignties.   Among these is the Soviet Republic and the Omsk All Russian Government.   It has been shown, as above stated, that this latter entity has made contracts, borrowed money, and otherwise transacted business in this State, and under the definition in the case of *State of Indiana* v. *Woram* (*supra*) it is a corporation public.   It is further urged that even if this be a fact, the court should take judicial notice that such government had ceased to exist.   We cannot take judicial notice of any such fact.   Historically we may note that the government was driven out of its capital, and the then head of the government executed, but further than this we cannot take judicial cognizance.   It is claimed that on the motion herein the fact of its present non-existence was proved, but the contrary was asserted in opposing affidavits.   The burden rests upon one who attacks a judgment of the court on a claim of lack of jurisdiction, upon a fact not appearing upon the record, to establish the fact by clear and convincing proof.   Counsel further argues that even if we should not decide the fact of the termination of existence of the Omsk All Russian Government, the order must be reversed, as it cannot be allowed to stand with a fact essential to its existence undetermined.   In this he overlooks the fact that the judgment is regular on its face, and every presumption is in favor of its validity, and it is not sufficient for one who attacks it to raise a doubt as to a jurisdictional fact, but he must prove that the jurisdiction did not exist.   We note that, although it is alleged that contracts were made and payments made by Serge Ughet, and the State Department referred inquiries as to the status of the defendant to the Russian Ambassador, no affidavit or certificate was produced from either of these persons.   Therefore, even if we considered that these appellants were in position to urge the objection, we should hold upon the facts as well as upon the law that the objections were not well taken.

The other objections do not require discussion.   If any funds of the Russian government have been impounded, it is for that government to raise the objection.   The appellants cannot escape an examination to ascertain the status of funds in its possession by asserting that fact.   The judgment creditor has a right to the examination to develop the true facts.

I can see no manner in which the appellants have been aggrieved by the denial of their motion to vacate the order. They are brought into court merely as witnesses to disclose whether, as is alleged, they are indebted to the defendant. If they prove they are not so indebted and that they do not have any money or property in their possession belonging to the defendant, the proceeding ends so far as they are concerned. If it should appear that they have money or property of, or are indebted to, the defendant, then it will be that property of the defendant which will be applied toward the satisfaction of the judgment, and not the property of the appellants.

The judgment creditor is entitled to pursue the remedies given him by the Civil Practice Act and the Rules of Civil Practice to enforce the judgment.

The order should be affirmed, with ten dollars costs and disbursements.

Clarke, P. J., Dowling, Smith and Greenbaum, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.